**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


KYLE STECHERT and             :
MARIE STECHERT, on behalf of  :   CIVIL ACTION
themselves and all others     :
similarly situated            :
                              :   NO. 17-CV-784
        vs.                   :
                              :
THE TRAVELERS HOME AND MARINE :
INSURANCE COMPANY, THE        :
TRAVELERS COMPANIES, INC.,    :
TRAVELERS PROPERTY CASUALTY   :
COMPANIES and TRAVELERS       :
INDEMNITY COMPANY             :


## MEMORANDUM AND ORDER


**JOYNER, J.**                                    **May 15, 2018**


        This putative class action has been brought before this
Court for disposition of Defendants' Motion for Summary Judgment
on the individual claims of the Plaintiffs, Kyle and Marie
Stechert.  For the reasons outlined in the following paragraphs,
the Motion shall be GRANTED.

### History of the Case

        The instant action has its origins in an automobile accident
which occurred on January 23, 2015 when the 2014 Chevrolet
Equinox which Plaintiff Marie Stechert was driving was struck by
another vehicle when it turned left directly into Mrs. Stechert's
path of travel, pushing her off the road into a utility pole.  As
a result of this accident, Mrs. Stechert and her two small

children were injured and their car had to be towed away.

Shortly thereafter, Plaintiff Kyle Stechert contacted his insurance agent at the Univest Insurance Agency in Lansdale, PA to notify them of the accident and the agent then turned the matter over to the Stecherts' automobile insurance carrier, Travelers Home and Marine Insurance Company[1]. Under their Travelers policy, Plaintiffs had an "extended transportation expense" or "ETE" benefit which afforded them the ability to secure a rental vehicle at the maximum rate of $30 per day up to a total of $900, or for a period not to exceed 30 days. After receiving notification of the accident, a Travelers representative arranged for a five-day rental car reservation for Plaintiffs through Enterprise Rent-A-Car. Thus, following discharge of Mrs. Stechert and the children from the hospital emergency room later that afternoon, Mr. and Mrs. Stechert obtained a rental car from Enterprise. Plaintiffs however, required a larger car than what was available for $30 per day, and therefore they personally paid the overage of $11.49 daily for the vehicle they rented.

A few days after the accident, Travelers sent an appraiser

---

[1]  There is some question as to which Travelers' entity or entities is a proper party here inasmuch as the entity identified on Plaintiffs' policy is variously simply "Travelers" and "Travelers Property Casualty Companies;" the entity identified on the assigned appraiser's business cards is "The Travelers Companies, Inc." "The Travelers Home and Marine Insurance Company" appears on the Stecherts' declarations sheet and Mr. Stechert testified that he wrote his premium checks to "Travelers Affiliates and Indemnity." Given that there is no evidence on this record as to which of these parties should be dismissed from this case, we find that all of them were properly named as defendants.

to Souderton Auto Body in Souderton, Pennsylvania to examine the damaged Equinox. On January 27, 2015, that appraiser, Brian Killen, determined the vehicle to have been a total loss. On that same date, Mr. Killen sent a form "Rental Reimbursement/Loss of Use Notice" to Mr. Stechert which, in addition to notifying him that the vehicle had been deemed a "Total Loss," also contained the following language:

> "Throughout this process, if your vehicle is determined to be a total loss, your rental will be limited to 5 days from when your vehicle was deemed non-repairable."

Notwithstanding this language, Plaintiffs did not return their rental vehicle within five days. Rather, it took until February 6, 2015 for Travelers to determine, in consultation with the leasing company which owned the Equinox, that its value was $19,752.60. Plaintiffs disagreed with that assessment and requested an extension on the rental car. Travelers granted the extension to February 13, 2015 and told them to submit comparable values for consideration. Although Travelers had been in discussions with Ally Bank (the lienholder on the Stecherts' vehicle) about Ally sending a letter of guarantee[2], this issue was not resolved until after February 13th. On the morning of February 12, 2015, the Travelers adjuster assigned to the Plaintiffs' claim entered the following notes into the claim

---

[2] Although it is not entirely clear from the record, the Court surmises that a letter of guarantee is a document which is required before the title to a vehicle can be released and the vehicle sold for salvage.

file:

> Spoke with Gloria at Ally Bank Total Loss and she advised
> that the LOG request is still in progress and will send it
> out as soon as their review has been completed, and could
> not give me an eta.

> Called insured and left voicemail message following up on
> the status of the LOG request and if he had found any
> comparables to submit for review.

> Extended rental to 2/18.  Updated reserves to authorized
> total of $810.00.

Apparently, however, that voicemail message was not received
by Plaintiffs and that evening, believing that they would have to
return their rental the next day, Plaintiffs purchased a pre-
owned 2012 Chevrolet Equinox.  The following morning, the rental
vehicle was returned to Enterprise.  However, it also does not
appear that Plaintiffs informed Travelers that they had purchased
a replacement vehicle or that they had returned the rental to
Enterprise because the adjuster added the following note to the
claim file at 12:05:52 p.m. on February 13:

> Spoke with Mr. Stechert and reviewed total loss claim
> status.  Advised waiting for LOG from Lienholder. Comparable
> submitted by agent is n/a and also reviewed rental and 30
> days would be 2/21.

> I extended rental to 2/21 which is the maximum.  Updated
> reserves to $900.00.

The adjuster's notes reflect that the letter of guarantee
was finally received from Ally Financial for $19,752.60 on
February 17, 2015 and that at 3:27:47 p.m. that same day, she
left a voicemail message for Plaintiff "following up on valuation

of vehicle prior to payment, as he thought he would be receiving a payment for settlement."

By this action, Plaintiffs assert that in sending them the Rental/Reimbursement/Loss of Use Notice (hereafter "the Rental Letter") with the language limiting the rental to five days from the date the total loss determination is made, Travelers breached its contract with them insofar as their policy did not contain such a limitation. Plaintiffs also submit that the policy was further breached by Travelers' failure to make a determination as to what period of time was reasonably required to repair or replace their vehicle. In addition to seeking monetary damages for breach of contract, Plaintiffs also allege that Defendants acted in bad faith and in violation of 42 Pa. C. S. §8371 thereby entitling them to further compensatory and punitive damages as well as declaratory and equitable/injunctive relief. Further, Plaintiffs seek to represent a class consisting of:

> All persons, since at least six years prior to the filing of this Complaint, who have been policyholders of automobile insurance policies sold in the Commonwealth of Pennsylvania by Defendants (and/or their subsidiaries, affiliates and/or related entities) that have provided Extended Transportation Expense Coverage, who have made a claim to Defendants for Extended Transportation Expense Coverage as a result of a total loss of a vehicle damaged in a covered accident, and as to whom Defendants have limited the amount of time such coverage is provided to a period of time less than thirty (30) days. Excluded from the Class are Defendants, each of the parents, subsidiaries, authorized distributors and affiliates, and their legal representatives, heirs, successors, and assigns of any excluded person.

In our Order of November 8, 2017, this Court granted

Defendants' Motion to Stay Class Certification or for Protective Order and prohibited the taking of discovery relative to the class and the issue of class certification until after such time as we issued a decision on summary judgment motions on the Plaintiffs' individual claims. On January 17, 2018, Defendants timely filed the motion for summary judgment which is now before us.

## Standards for Determining Summary Judgment Motions

Under Fed. R. Civ. P. 56(a):

> A party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense - on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

As this Rule makes clear then, summary judgment is appropriately entered *only* when the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Willis v. UPMC Children's Hospital of Pittsburgh, 808 F.3d 638, 643 (3d Cir. 2015). An issue of fact is material and genuine if it "affects the outcome of the suit under the governing law and could lead a reasonable jury to return a verdict in favor of the nonmoving party." Parkell v. Danberg, 833 F.3d 313, 323 (3d Cir. 2016)(quoting Willis, supra. and Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248,106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

6

In considering a motion for summary judgment, the reviewing court should view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Burton v. Teleflex, Inc., 707 F.3d 417, 425 (3d Cir. 2013). "If the non-moving party bears the burden of persuasion at trial, 'the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden.'" Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006)(quoting Wetzel v. Tucker, 139 F.3d 380, 383, n.2 (3d Cir. 1998)). In response, and "to prevail on a motion for summary judgment, 'the non-moving party must present more than a mere scintilla of evidence; there must be evidence on which the jury could reasonably find for the non-movant.'" Burton, supra,(quoting Jakimas v. Hoffmann-La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007)). Thus, "[t]he moving party is entitled to judgment as a matter of law when the non-moving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Moody v. Atlantic City Board of Education, 870 F.3d 206, 213 (3d Cir. 2017)(quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed.2d 265 (1986)).[3]

---

[3] Rule 56(c), discussing summary judgment procedures, is in accord and states as follows in pertinent part:

**(1) Supporting Factual Positions**. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

## Discussion

Defendants' motion for summary judgment is essentially premised on the argument that since Plaintiffs received the Extended Transportation Expense benefits to which they were entitled, Defendants are entitled to the entry of judgment in their favor as a matter of law and Plaintiffs are therefore not proper class representatives. We address each of Plaintiffs' claims *seriatim*.

*A. Breach of Contract*

As noted, in Count I of their Complaint, Plaintiffs raise a cause of action for breach of contract against Travelers arising out of the contents of the Rental Letter and for Defendants' purported failure to determine what a reasonable length of time would have been to enable them to acquire a replacement vehicle.

It has long been the law in Pennsylvania that to prevail on a claim for breach of contract, a Plaintiff must show: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." Kaymark v. Bank of America, N.A., 783 F.3d 168, 182

---

**(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

**(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

...

(3d Cir. 2015)(quoting Omicron Systems, Inc. v. Weiner, 2004 PA Super 389, 860 A.2d 554, 564 (Pa. Super. 2004)); Conquest v. WCM Mortgage Corp., 247 F. Supp. 3d 618, 638 (E.D. Pa. 2017).  "The essential elements of a contract will be found to exist where: (1) 'both parties have manifested an intent to be bound by the terms of the agreement, (2) the terms are sufficiently definite, and (3) ... consideration existed.'" Cook v. General Nutrition Corp., Civ. A. No. 17-135, 2017 U.S. Dist. LEXIS 162125 at *18 (W.D. Pa. Sept. 29, 2017) (quoting Johnston the Florist, Inc. v. TEDCO Construction Corp., 441 Pa. Super. 281, 657 A.2d 511, 516 (Pa. Super. Ct. 1995)).

In addition, the law is also clear that "the plaintiff in an action for breach of contract has the burden of proving damages resulting from the breach" and that generally speaking, "damages are not recoverable if they are too speculative, vague or contingent and are not recoverable for loss beyond an amount that the evidence permits to be established with reasonable certainty." Spang & Co. v. U.S. Steel Corp., 519 Pa. 14, 545 A.2d 861, 866 (Pa. 1988); Printed Image of York v. Mifflin Press, Ltd., 2016 PA Super 18, 133 A.3d 55, 60 (Pa. Super. 2016).  To be sure, a damage award should place the non-breaching party as nearly as possible in the same position it would have occupied had there been no breach and thus, the measure of damages for breach of contract is compensation for the loss sustained.

<u>Chestnut Creek Construction v. Murphy</u>, 2017 Pa. Super. Unpub.

LEXIS 1693 at *10, 170 A.3d 1189 (Pa. Super. May 4, 2017)(citing

<u>Lambert v. Durallium Products Corporation</u>, 364 Pa. 284, 72 A.2d

66, 67 (1950)).

In scrutinizing the record in the case at hand, we can only

find that the first required element for maintenance of a breach

of contract action has been shown here in that the terms of the

insurance contract are relatively clear and straight-forward and

there is no dispute that the auto policy had been paid for and

was in place on the date of the accident.  There is also no

question but that both of the parties agreed to be bound by the

terms of the insurance contract.

The matters of whether there was a breach of the terms of

the insurance policy and damages as a result are considerably

more problematic.  To begin, we note that the policy language

concerning the ETE benefit is designated as Coverage "G" on the

"Automobile Policy Declarations":

G.    Extended Transportation Expense

      $30 per day/$900 maximum

The "Insuring Agreement" portion of the policy goes on to

provide in pertinent part:

**B. Extended Transportation Expenses**.  When there is a loss
to a "your covered auto" described in the Declarations for
which a specific premium charge indicates that Coverage G -
Extended Transportation Expenses is afforded, or to "non-
owned auto," we will pay, without application of a
deductible, up to the amount per day to a maximum amount as

shown in the Declarations for:

1.  Transportation expenses incurred by you.

2.  Loss of use expenses for which you become legally responsible in the event of loss to a "non-owned auto."

This coverage applies only if:

1.  "Your covered auto" or the "non-owned auto" is withdrawn from use for more than 24 hours; and

2.  The loss is caused by "collision" or is covered under Coverage F - Comprehensive of this policy.

However, this coverage does not apply when there is a total theft of "your covered auto" or a "non-owned auto."  Such coverage is provided under Coverage F of this policy.

Our payment will be limited to that period of time reasonably required to repair or replace the "your covered auto" or the "non-owned auto."

Here, the record evinces that the notice which Travelers' appraiser, Brian Killen sent to Plaintiffs on January 27, 2015 informing them that their vehicle had been deemed a total loss also stated that "... if your vehicle is determined to be a total loss, your rental will be limited to 5 days from when your vehicle was deemed non-repairable."  Mr. Killen testified that in accordance with the wholly owned appraisal training which he received from Travelers, he has used this form letter (which also contains language addressing rental reimbursements for insureds whose vehicles are *not* total losses) in his dealings with all of the customers with whom he has had contact since he began working for Travelers some ten years ago.  Mr. Killen merely mailed the

notice, however.  He did not take any action relative to terminating or in any other way handling the Stecherts' rental car claim and Mr. Stechert testified that his only contact with Mr. Killen was when Killen called to inform him he was going out to appraise the car.

The evidence further reflects that once the vehicle was determined to be a total loss, Plaintiffs' claim was referred to a new adjuster, Mary Jane Hamrah, for handling.  The following morning - on January 28, 2015, Ms. Hamrah sent Kyle Stechert an email with her contact information, asking that he send her the lienholder information on his car and reviewing the rental reimbursement limits of $30 daily for a maximum benefit of $900. Ms. Hamrah's claims notes indicate that she then extended the rental to February 3rd.  The following day, Plaintiffs faxed a copy of the lease agreement which they had for the 2014 Equinox to Ms. Hamrah.  Over the next several days, Ms. Hamrah was in the process of communicating and negotiating the value of the totaled vehicle with the lienholder, Ally Bank, and on February 4, 2015, she notated the claim file to indicate that the updated value of the car was $19,752.60 and that the rental had been extended through February 9.  The Stecherts, however, took exception to this valuation and Travelers gave them the opportunity to submit comparable values for consideration.  In addition, Travelers was awaiting a letter of guarantee ("LOG") from the lienholder so the

rental was again extended through February 13th.

It appears, however, that the letter of guarantee was not received until after February 13th. As noted above, the record evidence here demonstrates that on the morning of February 12, 2015, Ms. Hamrah entered the following notes into the claim file:

> Spoke with Gloria at Ally Bank Total Loss and she advised that the LOG request is still in progress and will send it out as soon as their review has been completed, and could not give me an eta.
>
> Called insured and left voicemail message following up on the status of the LOG request and if he had found any comparables to submit for review.
>
> Extended rental to 2/18. Updated reserves to authorized total of $810.00.

Apparently, however, that voicemail message was not received by Plaintiffs, who testified that every time they had requested an extension on the rental it had been a "kind of like teeth pulling situation." Despite this characterization, Mr. Stechert acknowledged that his requests to extend had been granted until the time of his third request when Ms. Hamrah told him "that was it, I was done," and "that she can't grant any more" extensions. Thus, believing that they would have to return their rental by February 13th, on the evening of February 12, 2015, Plaintiffs purchased a pre-owned 2012 Chevrolet Equinox. At approximately 7:30 a.m. the following morning, they returned the rental vehicle to Enterprise.

It does not appear that prior to their purchase, Plaintiffs

sought another extension from Travelers nor did they inform

Travelers when they returned the rental to Enterprise because at

12:05:52 p.m. on February 13, 2015, Ms. Hamrah entered the

following note into the claim file:

> Spoke with Mr. Stechert and reviewed total loss claim
> status.  Advised waiting for LOG from Lienholder. Comparable
> submitted by agent is n/a and also reviewed rental and 30
> days would be 2/21.

> I extended rental to 2/21 which is the maximum.  Updated
> reserves to $900.00.

The letter of guarantee was finally received from Ally

Financial for $19,752.60 on February 17, 2015 such that at

3:27:47 p.m. that same day, Ms. Hamrah left a voicemail message

for Plaintiff "following up on valuation of vehicle prior to

payment, as he thought he would be receiving a payment for

settlement."

As is clear from Ms. Hamrah's testimony, Plaintiffs are

correct that Travelers never made a determination as to what

length of time would be "reasonably required to repair or replace

[their] covered auto."  Rather, she testified that she handled

the plaintiffs' claim on an individual basis and based upon her

conversations with them, and what their needs and coverage limits

were.  We find this testimony to be consistent with the claims

notes and other evidence in the record.  And, while it does

appear that there was some mis-communication on the part of *both*

parties resulting in an apparent misunderstanding between them,

we cannot find that this was anything other than a mistake.  We do not find that Defendants' actions and mis-communications rose to the level of a breach of contract.

Additionally, Plaintiffs have not met their burden of proving damages.  To be sure, the only evidence on this point is Mr. Stechert's testimony that: (1) the replacement 2012 Equinox turned out to be a "total lemon" which they wouldn't have settled for had he received Ms. Hamra's voicemail informing him that the rental had been extended; and (2) that their monthly payment increased from the $132/month which they were paying to lease the 2014 vehicle to $246.91/month to purchase the 2012 vehicle. Given the dearth of evidence on what other vehicles may have been available to Plaintiffs between February 13 and February 21 and at what cost, the Court is left to speculate as to what damages Plaintiffs may or may not have suffered as a consequence of turning in the rental on February 13th.  We therefore find that summary judgment is properly granted in favor of Defendants on Count I of Plaintiffs' Complaint.

*B.  Bad Faith*

In Count II of the Complaint, Plaintiffs allege that Defendants breached the implied covenants of good faith and fair dealing as well as the fiduciary duties which they owed to Plaintiffs and other members of the putative class and committed the tort of bad faith in the handling of their claim(s) for

Extended Transportation Expense benefits.

Although still an unsettled issue given that the Pennsylvania Supreme Court has yet to rule, the Pennsylvania Superior Court and the federal courts that have considered the matter have concluded that the duty of good faith and fair dealing does not create independent substantive rights and that there is no independent cause of action for breach of a duty of good faith and fair dealing separate and apart from a breach of contract action. See, e.g., Burton v. Teleflex, Inc., 707 F.3d 417, 432 (3d Cir. 2013); Moore v. Angie's List, Inc., 118 F. Supp. 3d 802, 819 (E.D. Pa. 2015) (citing, inter alia, LSI Title Agency, Inc. v. Evaluation Services, Inc., 2008 PA Super 126, 951 A.2d 384, 391 (Pa. Super. Ct. 2008)); Kantor v. Hiko Energy, LLC, 100 F. Supp. 3d 421, 430 (E.D. Pa. 2015).  This is because the implied covenant of good faith and fair dealing attaches to existing contractual obligations; it does not add new contractual duties.  Hanaway v. Parkesburg Group, LP, 2015 PA Super 263, 132 A.3d 461, 471 (Pa. Super. 2015), aff'd in part and rev'd in part on other grounds 2017 Pa. LEXIS 1941, 168 A.3d 146 (Pa. 2017). In essence, the duty to act in good faith and deal fairly infuses the parties' performance of their express contractual obligations and in determining whether there has been a breach of contract, the parties' conduct is evaluated through the lens of good faith and fair dealing.  Id, 132 A.3d at 472.  "Therefore, in practice,

16

the covenant of good faith functions 'as an interpretive tool' to aid the court in evaluating breach of contract claims but the implied duty is never 'divorced from specific clauses of the contract.'" <u>Tuno v. NWC Warranty Corp.</u>, No. 13-3528, 552 Fed. Appx. 140, 144, 2014 U.S. App. LEXIS 6176 (3d Cir. Apr. 3, 2014)(quoting <u>Northview Motors, Inc. v. Chrysler Motors Corp.</u>, 227 F.3d 78, 91 (3d Cir. 2000)).  Accordingly, to the extent that Count II endeavors to assert an independent claim for violation of the obligations to deal fairly and in good faith, judgment in favor of Defendants is now entered as a matter of law on this claim as well.

The so-called "tort" of bad faith arises in the insurance context in Pennsylvania under a statute - 42 Pa. C. S. §8371 which reads as follows:

**§8371.  Actions on insurance policies**

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer.

There is no tort bad faith claim at common law in Pennsylvania; rather parties may bring such claims only under Section 8371. <u>Reginella Construction Co., Ltd. v. Travelers Casualty & Surety</u>

Co. of America, 949 F. Supp. 2d 599, 614, n.2 (W.D. Pa. 2013).
See also, Leaver v. Noble Abstract Co., Civ. A. No. 16-4053, 2016
U.S. Dist. LEXIS 156057 at *9 (E.D. Pa. Nov. 10, 2016)
("Pennsylvania does not recognize an independent claim in tort
based on an obligation to act in good faith").

"To recover for bad faith, a plaintiff must show by clear
and convincing evidence that the insurer (1) did not have a
reasonable basis for denying benefits under the policy and (2)
knew or recklessly disregarded its lack of reasonable basis in
denying the claim."  U.S. Bank, N.A. v. First Am. Title Ins. Co.,
944 F. Supp. 2d 386, 403-404 (E.D. Pa. 2013), aff'd, 570 Fed.
Appx. 209 (3d Cir. 2014)(quoting Post v. St. Paul Travelers Ins.
Co., 691 F.3d 500, 522 (3d Cir. 2012) and Condio v. Erie Ins.
Exchange, 2006 PA Super 92, 899 A.2d 1136, 1143 (Pa. Super. Ct.
2006)).  Thus, because "the essence of a bad faith claim is the
unreasonable and intentional or reckless denial of benefits," "an
insurer may defeat a claim of bad faith by showing that it had a
reasonable basis for its actions."  Post, at 523(quoting Amica
Mut. Ins. Co. v. Fogel, 656 F.3d 167, 179 (3d Cir. 2011) and UPMC
Health System v. Metro. Life Ins. Co., 391 F.3d 497, 506 (3d Cir.
2004)).

In this case and as discussed above, the evidentiary record
does not support the Plaintiffs' claim that Travelers denied them
the extended transportation expense ("ETE") benefits to which

they were entitled under their policy.  For this reason, the only conclusion which we can now reach is that Defendants did not act in bad faith within the meaning of Section 8371 and that judgment is properly entered in their favor as a matter of law as to Count II in its entirety.

*C.  Declaratory Judgment and Equitable Relief*

In Counts III and IV of their Complaint, Plaintiffs ask the Court to declare that the Travelers' auto policy which they were issued contains just one limitation on the payment of ETE benefits - that the payment will only be "limited to that period of time reasonably required to repair or replace the 'your covered auto' or the 'non-owned auto.'"  Plaintiffs further seek a declaration that this limitation effectively imposed upon Defendants the obligation to determine the amount of time insureds reasonably require to replace their vehicles prior to terminating and/or limiting their ETE benefits and that Defendants breached the policy by issuing the Rental Letter.  And finally, Plaintiffs ask the Court to enjoin Travelers from issuing such Rental Letters in the future.

The Federal Courts are empowered to issue declaratory relief under 28 U.S.C. §2201.  That statute provides in relevant part:

**§2201. Creation of remedy**

**(a)** In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration,

19

whether or not further relief is or could be sought.  Any
such declaration shall have the force and effect of a final
judgment or decree and shall be reviewable as such.

> ...

The Third Circuit has stated that "[t]he objectives of the
Federal Declaratory Judgment Act are ... to avoid accrual of
avoidable damages to one not certain of his rights and to afford
him an early adjudication without waiting until his adversary
should see fit to begin suit, after damage had accrued."
Travelers Insurance Co. v. Davis, 490 F.2d 536, 543 (3d Cir.
1974).  And, as the Court has explained further:

> [a]n additional purpose is to clarify legal relationships
> before they have been disturbed or a party's rights
> violated.  The granting of a declaratory judgment is
> discretionary and not mandatory.  Said discretion is to be
> exercised in accordance with sound judicial principles and
> the purposes of the Declaratory Judgment Act.  One such
> judicial principle is the avoidance of needless conflict
> with a state's administration of its own affairs.  A second
> is that litigation belongs in the court which is best suited
> to determine the controversy.  The object of the ... Federal
> Declaratory Judgment Act is to afford a new form of relief
> where needed, not to furnish a new choice of tribunals or to
> draw into the federal courts the adjudication of causes
> properly cognizable by courts of the states.  The statute
> should not be used to secure a judgment which would impinge
> on a state proceeding and which might result in a conflict
> between the decisions of state and federal courts.  The Act
> is not a substitute for an appeal from a state judgment, nor
> does it convey to a federal court the power to review a
> state court decision.  In the appropriate exercise of its
> discretion, a federal court should deny declaratory relief
> under the same conditions wherein injunctive relief would be
> impermissible, *e.g.*, where the result would be interference
> with and disruption of state court proceedings.  The statute
> should not be used to try a case piecemeal.  A final factor
> is whether the granting of a declaratory judgment would
> result in increased congestion of the federal courts.

Id., at 543-544.

Moreover, these principles are largely in keeping with the general rule that the interpretation of an insurance contract is a question of law that is properly decided by the court. Reliance Insurance Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)(citing Standard Venetian Blind Co. v. American Empire Ins. Co., 503 Pa. 300, 304-305, 469 A.2d 563, 566 (1983)). If the terms of a policy are clear and unambiguous, the general rule in Pennsylvania is to give effect to the plain language of the agreement with the proper focus being the reasonable expectations of the insured. Duda v. Standard Insurance Co., NO. 15-2302, 649 Fed. Appx. 230, 238, 2016 U.S. App. LEXIS 8602 (3d Cir. May 10, 2016); Reliance, 121 F.3d at 901. An insurance policy provision is ambiguous if it is reasonably susceptible to more than one interpretation. McMillan v. State Mutual Life Assurance Co., 922 F.2d 1073, 1075 (3d Cir. 1990); I.S. Industries, Inc. v. Export-Import Bank of the United States, Civ. A. No. 99-CV-3361, 2000 U.S. Dist. LEXIS 4650 (E.D. Pa. April 12, 2000). Courts should not distort the meaning of the language or strain to find an ambiguity, nor is a contract rendered ambiguous merely because the parties disagree about its construction. Meyer v. CUNA Mutual Insurance Society, 648 F.3d 154, (3d Cir. 2011)(citing Williams v. Nationwide Mutual Insurance Co., 2000 PA Super 110, 750 A.2d 881, 885 (Pa. Super. Ct. 2000); Madison Construction Co.

V. Harleysville Mut. Ins. Co., 557 Pa. 595, 735 A.2d 100, 106
(Pa. 1999) and Pacific Indemnity Co. v. Linn, 766 F.2d 754, 761
(3d Cir. 1985)).

"When deciding whether to grant a permanent injunction, the
district court must consider whether: (1) the moving party has
shown actual success on the merits; (2) the moving party will be
irreparably harmed by the denial of injunctive relief; (3) the
granting of the permanent injunction will result in even greater
harm to the non-moving party; and (4) the injunction would be in
the public interest." SMJ & J, Inc. v. NRG Heat & Power, LLC,
912 F. Supp. 2d 189, 200 (M.D. Pa. 2012)(citing Shields v.
Zuccarini, 254 F.3d 476, 482 (3d Cir. 2001)). See also, Geneva
College v. Secretary, U.S. Dept., Health and Human Services, 778
F.3d 422, 435, n. 3 (3d Cir. 2015)("A permanent injunction
requires actual success on the merits"). The decision to grant
or deny permanent injunctive relief is an act of equitable
discretion by the district court, reviewable on appeal for abuse
of discretion. Ebay, Inc. v. MercExchange, L.L.C., 547 U.S. 388,
391, 126 S. Ct. 1837, 1839, 164 L. Ed.2d 641 (2006); Hayes v.
Ohio National Financial Services, Inc., 642 F. Supp. 2d 456, 462
(E.D. Pa. 2009).

In application of these principles to the remaining two
counts of Plaintiffs' complaint, we likewise cannot find any
basis upon which to grant either declaratory or

equitable/injunctive relief here.  For one, as our prior
discussion makes clear, the plaintiffs have not shown actual
success on the merits of their claims and as a consequence, their
claim for issuance of a permanent injunction fails.  As to the
issuance of declaratory relief, we agree with Plaintiffs that it
logically follows from the policy language outlining the ETE
benefit that a determination of the amount of time insureds
reasonably require to replace their vehicles must be made prior
to terminating and/or limiting ETE benefits.  This fact
notwithstanding, we cannot find that Defendants here necessarily
breached the policy by issuing the Rental Letter in the absence
of a showing that the plaintiffs were not afforded the benefits
to which they were due under the policy.[4]  For these reasons, we
shall grant judgment in favor of Defendants on Counts III and IV
of the Complaint as well.

    An Order follows.

---

    [4]  In so holding, we do acknowledge that we may have reached a
different conclusion had there been a showing that Defendants adhered to the
five-day limitation contained in the Rental Letter and actually terminated
Plaintiffs' ETE benefits prior to their purchasing a replacement vehicle, *i.e.*
that Defendants had not continued to extend the rental.  While the mis-
communications between these parties regarding this extension and the
replacement vehicle's purchase may be unfortunate, we do not find it to be a
policy violation.