**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **KYLE STECHERT, et al.,**<br><br>Plaintiffs,<br><br>*v.*<br><br>**THE TRAVELERS HOME AND MARINE INSURANCE COMPANY, et al.**<br><br>Defendants. | **CIVIL ACTION**<br><br>**NO. 17-0784-KSM** |

# MEMORANDUM

**MARSTON, J.** **November 9, 2021**

This is a putative class action lawsuit in which Named Plaintiffs Kyle and Marie Stechert allege that Defendants, The Travelers Home and Marine Insurance Company and thirty-seven of its affiliates (together, "Travelers"), breached their duties under certain insurance policies by providing less than thirty days of Extended Transportation Expense ("ETE") coverage to insureds whose vehicles were deemed total losses. Presently before the Court is Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (the "Motion").[1] (Doc. No. 51.) For the reasons below, the Motion is granted and the Court will schedule a Final Approval Hearing.

## *I. Background*

### *A. Background Litigation*

The Stecherts held a motor vehicle insurance policy with Travelers. (Doc. No. 1, Ex. A at ¶ 2.) They claim that their policy included ETE coverage, which required Travelers to pay for

---

[1] Unless otherwise noted, terms such as "Final Approval Hearing" are ascribed the same meaning as in the Stipulation of Settlement and Settlement Agreement. (*See* Doc. No. 51-1.)

a rental vehicle for a maximum of thirty days after their vehicle was deemed a total loss unless Travelers determined that less time was reasonably required to replace the totaled vehicle. (*Id.* at ¶¶ 12–13, 16.) The Stecherts allege that Travelers prematurely terminated ETE coverage without determining whether the insured needed additional time to replace the covered vehicle. (*Id.* at ¶ 6.) In January 2017, the Stecherts filed this lawsuit on behalf of themselves and all other similarly situated individuals,[2] claiming that Travelers had a practice of prematurely denying ETE coverage without first making a reasonableness determination. (*Id.*) The complaint alleges claims for breach of contract and bad faith denial of coverage and seeks a declaratory judgment and other equitable relief. (*Id.* at 21–28.) Travelers removed the case to this Court.[3] (Doc. No. 1.)

Following a period of discovery, Travelers filed a Motion for Summary Judgment (Doc. No. 26), which the Court granted (Doc. No. 35). The Stecherts appealed, and in September 2019, the United States Court of Appeals for the Third Circuit reversed the grant of summary judgment and remanded the case for further proceedings. (Doc. No. 38.) After about six months of additional discovery, the parties engaged in two "extensive arms-length negotiation sessions" with an experienced mediator, former magistrate judge Diane M. Welsh. (Doc. No. 51-3 at ¶ 27.) Following these mediation sessions and additional negotiation, the parties agreed to a settlement in principle in November 2020 (*id.* at ¶ 28) and entered into the Settlement Agreement in May 2021 (Doc. No. 51-1). Plaintiffs filed the unopposed Motion on May 27, 2021. (Doc. No. 51.) The Court held a hearing on the Motion on October 25, 2021. (Doc. No. 58.)

[2] Specifically, the Stecherts filed suit on behalf of individuals who held policies sold in the Commonwealth of Pennsylvania that included ETE coverage, who made a claim for ETE coverage for a total loss vehicle, and who received less than thirty days of ETE coverage. (*Id.* at ¶ 49.)

[3] This case was initially assigned to Judge Joyner and, in July 2021, was reassigned to Judge Marston.

***B. Settlement Agreement***

The Settlement Agreement contains the following provisions.

**1. Payments to Class Members**

The Settlement Class consists of individuals who, from January 16, 2011 through May 27, 2021, were issued policies in Pennsylvania that included ETE coverage, whose vehicles were deemed a total loss, and who received less than thirty days' of reimbursement for rental vehicles. (*See* Doc. No. 51-1 at ¶ 35.) As of August 2020, the parties had identified over 17,000 Class Members. (*Id.* at ¶ 45.)

Pursuant to the Settlement Agreement, Travelers will make a scaled payment to each member of the Settlement Class who submits a Valid Claim Form based on the number of days for which they were previously reimbursed for a rental vehicle. (*Id.*) As detailed in the following chart, the fewer days for which they were previously reimbursed, the greater the payment. (*Id.*)

| ***Number of Rental Days Previously Paid*** | ***Distribution per Class Member*** | ***Number of Class Members*** |
|---|---|---|
| 1 – 8 | $300 | 5,879 |
| 9 – 15 | $200 | 6,950 |
| 16 – 25 | $75 | 3,425 |
| 26 – 30 | $30 | 910 |

(*Id.*) Based on this scale and the number of Class Members, Travelers expects to pay over $3,400,000.[4] (Doc. No. 51-3 at ¶ 32.)

[4] To the extent Travelers identifies additional Class Members following the Preliminary Approval, the value of the settlement will increase, and the individual Class Members will still be entitled to the amount detailed in the chart above. (Doc. No. 58 at 19 ("Travelers has budgeted approximately 3.4 million dollars for these categories, subject to being increased after the preliminary order is entered . . . the additional people will not be paid from the 3.4 million[;] additional money pursuant to this [scaled payment] system will be added for the additional people, however many there are.").)

The distribution amount per Class Member will be determined in accordance with the Settlement Class List Data. (Doc. No. 51-1 at ¶ 44.) The Settlement Class List Data consists of Travelers' claims data, which Travelers has furnished to Plaintiffs and will update following the Preliminary Approval. (*Id.* at ¶¶ 36, 45.) Travelers will also provide sufficient identifying information so Class Counsel can review and verify the payment category for each Settlement Class Member. (*Id.* at ¶ 52.)

To receive payment under the Settlement, Class Members must submit a Valid Claim Form postmarked by a date no later than forty-five days after the Final Settlement Hearing. (*Id.* at ¶¶ 40, 42, 44.) A Valid Claim Form is a timely Claim Form that answers any combination of "Agree" or "I don't remember" to questions asking: (1) whether they held a Travelers' policy, (2) whether they were in an accident that resulted in their vehicle being deemed a total loss, and (3) whether Travelers paid for a rental car for any period of time. (*Id.* at ¶ 40.) A Class Member is qualified for payment if they answer all three questions with any combination of "Agree" or "I don't remember." (Doc. No. 51-1, Ex. A at 3.) Travelers will make payments to the Class Members no later than ninety days after the period for submitting claims has expired. (Doc. No. 51-1 at ¶ 44.)

**2. Change of Conduct**

Travelers has also agreed to change its conduct. (*Id.* at ¶ 62.) It has "drafted a new notice regarding ETE coverage, consistent with the language of its policies and Pennsylvania law"; it will reference the new notice in its Pennsylvania state-specific guidelines; and it has discontinued use of the form letter that was previously sent to the Stecherts and other similarly situated policyholders. (*Id.*)

**3. Additional Payments**

Finally, separate and apart from the amount to be paid to the Class Members, Travelers has agreed to pay "all of the costs of notice and settlement administration" (*id.* at ¶ 51), an incentive award of $20,000 for each class representative (*id.* at ¶ 59), and Class Counsel's attorneys' fees and expenses of up to $1,210,000 (*id.*).

**4. Notice to the Class**

The parties have chosen Epiq Class Action and Mass Tort Solutions ("Epiq") to serve as Claims Administrator. (*Id.* at ¶ 50.) Within twenty-one days of the Preliminary Approval, Epiq will create a public website with the Individual Notice, Claim Form, and other information on the Settlement. (*Id.* at ¶ 55.) Within forty-five days of the Preliminary Approval, Travelers will produce the Settlement Class List to Epiq and Class Counsel, which will include, among other details, each Class Member's name, last known address, claim number, date of loss, and number of rental days already paid under ETE coverage. (*Id.* at ¶ 52.)

Within seventy-five days of the Preliminary Approval, Epiq will send a copy of the Individual Notice and Claim Form to each Class Member's most recent address. (*Id.* at ¶ 53.) If an Individual Notice and/or Claim Form is returned as undeliverable, Epiq will resend the Individual Notice and Claim form to any forwarding address provided or via email, if that Class Member's email address is known. (*Id.* at ¶ 54.)

Class Members will have an opportunity to either opt out of the Settlement or to object and/or intervene by following the procedures set forth in the Settlement Agreement. (*Id.* at ¶¶ 68–72.)

#### 5. Release

After the Settlement is finally approved, the Settlement Class will release Travelers from claims and causes of action related to ETE coverage that were brought or could have been brought in this action. (*Id.* at ¶¶ 31, 79–80.) The Settlement "does not act to release claims unrelated to ETE benefits as set forth in the Action, and shall not be considered a release of any unrelated rights and benefits available under the Policies." (*Id.* at ¶ 31.)

## *II. Provisional Certification of the Settlement Class*

### *A. Legal Standard*

The Court may certify class actions for the sole purpose of settlement. *In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 476 (E.D. Pa. 2010) (citing *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 786 (3d Cir. 1995)). In these situations, the court "approves preliminary certification of the class," but reserves "[f]inal certification" until it "rules on whether the final settlement agreement is to be approved." *Id.* When a court certifies a class for settlement, "it must first find that the class satisfies all the requirements of Rule 23." *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 300 (3d Cir. 2005). The "central inquiry . . . is the adequacy of representation." *Id.*

Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure give the requirements for certifying a class. Under Rule 23(a), a class action is allowable only if:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *see also Reyes v. Netdeposit, LLC*, 802 F.3d 469, 482 (3d Cir. 2015) ("All potential classes must initially satisfy four prerequisites to be certified: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.").

If the Rule 23(a) conditions are met, then a case may proceed as a class action if one of the conditions of Rule 23(b) is also satisfied. Here, the Stecherts seek certification for a class under Rule 23(b)(3), which requires that "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also Reyes*, 802 F.3d at 482 (explaining that plaintiff must demonstrate "predominance and superiority" for certification under Rule 23(b)(3)).

***B. Analysis***

The Stecherts propose that the Settlement Class consist of "[a]ll first party total loss vehicle claimants of personal lines private passenger policies issued by . . . Travelers entities in Pennsylvania . . . , with a date of loss from January 16, 2011 to May 27, 2021, who were paid for 1–30 days under rental reimbursement extended transportation expenses coverage." (Doc. No. 51-1 at ¶ 35.) This class meets all six requirements of Rules 23(a) and 23(b). The Court address each requirement in turn.

**1. Rule 23(a) Requirements**

*Numerosity.* While "[t]here is no magic number of class members needed for a suit to proceed as a class action," the Third Circuit has held that "numerosity is generally satisfied if there are more than 40 class members." *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 426 (3d Cir. 2016). Here, the Stecherts say that the class includes at least

17,000 people, and that joinder is therefore impracticable. (Doc. No. 51-1 at ¶ 45.) We agree that a class of 17,000 people is sufficiently large to satisfy Rule 23(a)'s numerosity requirement.

*Commonality*. As the Third Circuit has explained, "[a] putative class satisfies Rule 23(a)'s commonality requirement if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *In re Nat'l Football League Players*, 821 F.3d at 426–27 (quoting *Rodruigez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013)). It is "easy enough," to meet the requirement, provided all members of the class have claims that are capable of class-wide resolution. *Id.* Commonality is met in this case because each member of the proposed class held a Travelers policy that included ETE coverage. (Doc. No. 51-1 at ¶ 35.) Thus, this case presents a sufficient degree of commonality, even if the amount of damages to which each class member is entitled varies.

*Typicality*. There is a "'low threshold' for typicality"; provided "the interests of the class and the class representative are aligned," courts will find typicality even when class members' claims are only legally similar, and not factually similar. *In re Nat'l Football League Players*, 821 F.3d at 427–28 (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182–83 (3d Cir. 2001)). The Stecherts' claims are both legally and factually similar to those of other members of the putative class. All of the Class Members held policies that included ETE coverage, were in an accident that caused their vehicles to be deemed a total loss, and received one to thirty days of rental car reimbursement. (Doc. No. 51-1 at ¶ 35.) These common facts led to the proposed class's common legal claims for breach of contract and bad faith. Although the Class Members may differ in the number of rental days for which they have already been reimbursed, there is no indication that the Stecherts are atypical in the number of

days for which they were reimbursed. Accordingly, the proposed class meets Rule 23(a)'s typicality requirement.

*Adequacy of Representation.* Courts considering adequacy of representation examine both "the qualifications of class counsel and the class representatives." *In re Nat'l Football League Players*, 821 F.3d at 428. Under this prong of the analysis, courts seek "to root out conflicts of interest within the class" and to "uncover conflicts of interest between the named parties and the class they seek to represent." *Id.* at 428, 430 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)). "A class representative must represent a class capably and diligently," but this is a low bar: "'a minimal degree of knowledge' about the litigation is adequate." *Id.* at 430 (quoting *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007)). "[T]he linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class." *In re Cmty. Bank of N. Va.*, 795 F.3d at 393 (quoting *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 183 (3d Cir. 2012)).

First, the class representative must demonstrate adequate standing. "A litigant must be a member of the class which he or she seeks to represent at the time the class action is certified by the district court." *Sosna v. Iowa*, 419 U.S. 393, 403 (1975) (string citation omitted). Here, the Stecherts allege that they held the Travelers policy at issue and that Travelers refused to give them 30 days of rental car coverage after their car was deemed a total loss. Therefore, they would be members of the proposed class and have standing to pursue claims on behalf of the class. Accordingly, the Stecherts have standing to pursue these claims on behalf of the class.

Second, there is no conflict of interest between the Stecherts and the other Class Members. The Stecherts' alleged harm—underpaid rental vehicle reimbursement—is factually

and legally identical to the harm allegedly suffered by every other class member.[5] Moreover, the Stecherts have represented the class capably and diligently. Mr. and Mrs. Stechert both "provided documents, were deposed, successfully appealed to the Third Circuit, and were actively involved in the prosecution of this class action." (Doc. No. 51 at 26.)

With respect to class counsel, the important factors are whether the attorneys "(1) possessed adequate experience; (2) vigorously prosecuted the action; and (3) acted at arm's length from the defendant." *In re Gen. Motors Corp.*, 55 F.3d at 801. The Third Circuit has indicated that courts should consider the non-exhaustive list of factors in Rule 23(g) for appointing counsel in determining the adequacy of representation. *See In re Nat'l Football League Players*, 821 F.3d at 429; *see also Sheinberg v. Sorensen*, 606 F.3d 130, 132 (3d Cir. 2010) ("Although questions concerning the adequacy of class counsel were traditionally analyzed under the aegis of the adequate representation requirement of Rule 23(a)(4) of the Federal Rules of Civil Procedure, those questions have, since 2003, been governed by Rule 23(g)."). Those factors include counsel's work in the instant class action, experience in handling class actions or other kinds of complex litigation, knowledge of the applicable laws, and resources available for representing the class. Fed. R. Civ. P. 23(g)(1)(A). Additionally, the

[5] For this same reason, there are also no conflicts of interest within the class. *See In re Nat'l Football League Players*, 821 F.3d at 432 (holding there was no conflict of interest where "the incentives of class members were aligned" by a common injury and structural protections ensured that the interests of class members with a current injury and class members with potential future injuries were both protected); *cf. Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 595 (1997) (holding that representation was inadequate where people with diverse injuries sought to participate as members of a single class). Unlike the class in *Amchem*, here there is no conflict or potential conflict between class members with an existing injury and class members with an existing future injury. Travelers has implemented a new ETE coverage policy (*see* (Doc. No. 51-1 at ¶ 62), and the proposed Settlement Class includes only policyholders who were issued policies from 2011 through May 27, 2021 (*id.* at ¶ 35). Accordingly, though there may be Class Members who sustain a future injury, their potential future claims are not covered by the terms of the settlement.

court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Under each of the Rule 23(g)(1)(A) factors, the proposed class counsel—Richard M. Ochroch, Brett N. Benton, and Andrew R. Ochroch from the law firm of Richard M. Ochroch & Associates, P.C. and Marc P. Weingarten and James A. Barry from The Locks Law Firm—are qualified to "fairly and adequately represent the interests of the class." All five attorneys are experienced in handling complex litigation generally, class actions specifically, and the breach of contract and bad faith claims asserted in this case. (*See* Doc. No. 51-3 at 12–36.) This group of attorneys is particularly experienced in the insurance context—almost all of the attorneys have experience advising plaintiffs in coverage disputes with insurers. (*Id.*) In fact, the attorneys from the law firm of Richard M. Ochroch & Associates, P.C. have represented plaintiffs in similar class actions against other insurers *arising out of substantially the same set of facts*. (*See* Doc. No. 58 at 31:14–32:9.) Indeed, the Philadelphia Court of Common Pleas has granted final approval of a class action settlement in one such case. *See Schiffman v. Gen. Ins. Co. of Am.*, No. 101100155 (Phila. Ct. Common Pleas July 16, 2015).

Not only are the attorneys well qualified to pursue this suit, but they have done so with vigor. Prior to filing the complaint, they "spent time investigating the claim and identifying causes of action." (Doc. No. 51-3 at ¶ 7.) Proposed class counsel has also reviewed "thousands of pages of public records and documents exchanged," taken and/or defended eleven depositions, and appealed to the United States Court of Appeals for the Third Circuit. (*Id.* at ¶ 10.) Moreover, the parties worked with the Honorable Diane M. Welsh, an experienced mediator, to facilitate arms' length negotiations, which weighs in favor of finding adequacy. *See Fulton-*

*Green v. Accolade, Inc.*, Civil Action No. 18-274, 2019 WL 4677954, at *6 (E.D. Pa. Sept. 24, 2019) (collecting cases).

In sum, the proposed class's interests have been advanced by experienced, dedicated counsel, working at arm's length from Travelers. The Court finds Rule 23(a)(4) is satisfied.

**2. Rule 23(b)(3) Requirements**

In addition to meeting the requirements of Rule 23(a), a named plaintiff must also satisfy Rule 23(b)(3), which requires the Court find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The key issue under the predominance factor is "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Windsor*, 521 U.S. at 623. The Third Circuit has counseled that courts should be "more inclined to find the predominance test met in the settlement context."[6] *In re Natl' Football League Players*, 821 F.3d at 434 (quoting *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 304 n.29 (3d Cir. 2011) (en banc)).

Here, predominance is satisfied. The claims of all members of the putative class rely on common questions of fact—the Class Members' claims all depend on whether they held ETE coverage, used that ETE coverage to pay for a rental vehicle after the insured vehicle was deemed a total loss, and were paid one to thirty days of rental vehicle reimbursement from Travelers. (*See* Doc. No. 51 at 47.) Likewise, each Class Member's claim raises an identical question of law: whether Travelers' practices regarding the early termination of ETE coverage

[6] To be clear, the fact that all members of the proposed class have an interest in the settlement itself does not help establish predominance. *See Windsor*, 521 U.S. at 622–23. Nonetheless, the fact that Travelers has agreed to settle not just with the Stecherts, but with thousands of similarly situated policyholders, is a strong signal of the predominance of common factual and legal questions among the policyholders' claims.

breached the governing insurance policies and violated Pennsylvania law. (*See id.*) Taken together, these common questions of law and fact predominate over individual factual questions, such as how many days each Class Member was not paid a rental reimbursement. *Cf. Brooks v. Educators Mut. Life Ins. Co.*, 206 F.R.D. 96, 104–08 (E.D. Pa. 2002) (holding that common questions predominated in dispute over insurer's alleged failure to pay for anesthesia coverage in accordance with its insurance policies where all policies at issue contained identical language for determining availability of anesthesia coverage).

The last requirement for certifying a class is that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). When evaluating this requirement, courts consider "the class members' interests in individually controlling litigation, the extent and nature of any litigation, the desirability or undesirability of concentrating the litigation, and the likely difficulties in managing a class action." *In re Nat'l Football League Players*, 821 F.3d at 435 (citing Rule 23(b)(3)(A)–(D)). Superiority can be satisfied where the settlement prevents "duplicative lawsuits and enables fast processing of a multitude of claims." *Id.* (quoting *In re Nat'l Football League Players' Concussion Inj. Litig.*, 307 F.R.D. 351, 382 (E.D. Pa. 2015)); *see also Sullivan*, 667 F.3d at 312.

In this case, an analysis of superiority weighs towards granting the provisional class certification. At this stage, it is somewhat difficult to assess the extent to which individual Class Members' interest in controlling litigation would be harmed by class certification. Pre-notice, we are unable to evaluate whether individual members care strongly enough about the suit to, for instance, opt out of it. *See In re Nat'l Football League Players*, 307 F.R.D. at 382 (finding superiority in part because relatively few class members had opted out of the class). However, as the Stecherts point out, the relatively small size of the claims each class member is entitled to

makes it practically difficult—if not impossible—for individual Class Members to control their own suits. (Doc. No. 51 at 49.)

It is also desirable to concentrate litigation in this forum. The Court recognizes that the Class Members are spread throughout the Commonwealth of Pennsylvania (Doc. No. 51-1 at ¶ 35) and the parties have not ascertained the exact number of Class Members located in the Eastern District of Pennsylvania (as opposed to the Middle or Western Districts) (Doc. No. 58 at 35:7–10). Nonetheless, given that the Stecherts reside within the Eastern District of Pennsylvania, the remainder of the Class Members reside *somewhere* within Pennsylvania, and no other forum readily presents itself as more desirable than this one, we find that it is desirable to concentrate litigation in this Court. *Cf. Zeno v. Ford Motor Co.*, 238 F.R.D. 173, 197–98 (W.D. Pa. 2006) (finding it desirable to concentrate litigation in the Western District of Pennsylvania where "the class includes purchasers only in the Commonwealth [of] Pennsylvania").

Moreover, there are not likely to be difficulties in managing the class action. Once we grant preliminary approval of the parties' settlement agreement, only final approval of the settlement agreement remains. While it is conceivable that a great many members of the class could object to the terms of the settlement, thus making final approval difficult, this is unlikely. *See* Theodore Eisenberg & Geoffrey Miller, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues*, 57 Vand. L. Rev. 1529, 1546 (2004) (finding that just 0.1 percent of class members opt out of class actions, and similarly small numbers object). Moreover, even if there were a substantial number of objectors, evaluating their concerns in this case would be much simpler than them bringing entirely separate suits. *See In re Nat'l Football League Players*, 307 F.R.D. at 382.

Accordingly, superiority is met in this case.

* * *

For these reasons, we find that the requirements of Rules 23(a) and 23(b)(3) are satisfied, and we will conditionally certify the class.

### *III. Appointing Class Representatives*

Appointment of class representatives is governed by Rule 23(a) of the Federal Rules of Civil Procedure, which requires that their claims be "typical of the claims . . . of the class" and that they "will fairly and adequately protect the interests of the class." For the reasons previously discussed in Part II.B.1, those requirements are met here, and the Court will appoint Kyle and Marie Stechert as representatives of the settlement class.

### *IV. Appointing Class Counsel*

Rule 23(g) of the Federal Rules of Civil Procedure provides the standard for the appointment of class counsel. Class counsel are responsible not just for representing the interests of the class representative, but for "fairly and adequately represent[ing] the interests of the class." Fed. R. Civ. P. 23(g)(4). As discussed above in Part II.B.1, Rule 23(g) provides a non-exclusive list of factors courts should consider when appointing class counsel. For the reasons previously discussed, we find that Richard M. Ochroch and Associates, P.C. and The Locks Law Firm have the ability and resources to "fairly and adequately represent the interests of the class." Accordingly, they will be conditionally appointed as class counsel.

### *V. Appointing Claims Administrator*

Parties may use class notice experts or professional claims administrators to provide a class notice and otherwise administer a settlement. Fed. R. Civ. P. 23 note(c)(2) (2018). Epiq, the proposed claims administrator, is "one of the largest class action administrators in the

country" and has experience administering large class action settlements, such as this one.[7] (Doc. No. 58 at 37.) The Court appoints Epiq to serve as the Claims Administrator and administer the settlement in good faith in accordance with the terms of the Settlement Agreement.

***VI. Preliminary Approval of the Class Settlement***

Preliminary approval of a proposed class-action settlement is left to the discretion of the trial court and is based on an examination of whether the proposed settlement is "likely" to be approved under Rule 23(e)(2). Fed. R. Civ. P. 23(e)(1)(B)(i); *see In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 299 (3d Cir. 1998); *see also In re Traffic Exec. Ass'n-E. R.R.s*, 627 F.2d 631, 634 (2d Cir. 1980) ("[Preliminary approval] is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness."). Preliminary approval is not a commitment to approve the final settlement. "[R]ather, it is a determination that 'there are no obvious deficiencies and the settlement falls within the range of reason.'" *Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 438 (E.D. Pa. 2008) (quoting *Smith v. Pro. Billing & Mgmt. Servs., Inc.*, Civil No. 06-4453 (JEI), 2007 WL 4191749, at *1 (D.N.J. Nov. 21, 2007)). The settlement is entitled to "an initial presumption of fairness" if "the court finds that: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Gen. Motors Corp.*, 55 F.3d at 785.

[7] Epiq has served as claims administrator in a number of other cases in this Circuit. *See, e.g.*, *In re Ocean Power Techs. Inc., Sec. Litig.*, No. 14–3799 (FLW) (LHG), 2016 WL 7638464, at *2 (D.N.J. June 7, 2016) ("The Court approves the appointment of Epiq . . . as the Claims Administrator . . . ."); *Marchese v. Cablevision Sys. Corp.*, No. 10–2190 (MCA) (MAH), 2016 WL 7228739, at *3 (D.N.J. Mar. 9, 2016) ("The Court hereby appoints Epiq . . . as Claims Administrator to assist in processing of claims and disseminating the Notice to the Settlement Class.").

Despite the relatively low bar for preliminary approval, the court does not act as a mere rubber stamp for the parties' proposed agreement. This is particularly true when a proposed settlement will impact the legal rights of individuals who are not yet represented in the litigation and likely are unaware the litigation exists. In that situation, unscrupulous counsel, and, to some extent, representative plaintiffs, may seek disproportionately high fees by settling a case quickly, on terms unfavorable to absent class members and without having done much work on the case. These issues are compounded in cases where, as here, each individual class member is entitled to only a relatively small recovery through the settlement and will accordingly be disincentivized from obtaining outside counsel. For these reasons, courts evaluating a settlement have a "fiduciary responsibility, as the guardian[s] of the rights of the absentee class members." *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *see also In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 349 (3d Cir. 2010) ("[T]rial judges bear the important responsibility of protecting absent class members.").

After review of the proposed Stipulation of Settlement and Settlement Agreement and the proposed Individual Notice and Claim Form, we are satisfied that the proposed settlement meets the criteria for preliminary approval. In the preliminary approval phase, we are tasked only with determining whether "the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval." *In re Nat'l Football League Players' Concussion Inj. Litig.*, 301 F.R.D. 191, 198 (E.D. Pa. 2014) (quoting *Mehling v. N.Y. Life Ins. Co.*, 246 F.R.D. 467, 472 (E.D. Pa. 2007)). The proposed settlement at issue here does not raise any doubts as to fairness or otherwise reveal any deficiencies.

***A. Benefits to Settlement Class***

Most notably, Class Members will substantially benefit from the proposed settlement terms. Travelers expects to pay out over $3,400,000 to the members of the class. (Doc. No. 51-3 at ¶ 32.) This represents "approximately 34% of the maximum possible compensatory damages that could have been awarded to the Class Members if this matter were certified as a class, tried to verdict[,] and upheld through appeal." (Doc. No. 51 at 25.) That, on its own, is a substantial monetary recovery. *Cf. Shabazz v. Colonial Park Care Center LLC*, No. 17-cv-445, 2021 WL 4860770, at *3 (M.D. Pa. Oct. 19, 2021) (holding that settlement, which reflected "around 43% of the total amount of damages conceivably recoverable in this mater" represented a substantial recovery for plaintiffs, particularly given the risks attendant with continued litigation).

The settlement also provides for nonmonetary consideration—namely, Travelers is changing its internal guidelines regarding ETE coverage. *Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1311 (3d Cir. 1993) ("Despite the difficulties they pose to measurement, nonpecuniary benefits . . . may support a settlement.") This nonmonetary relief factors into the benefits the Class Members are deriving from the settlement, especially to the extent they still hold policies with Travelers. Given the risks (and costs) associated with litigating through class certification, trial, and appeal, and the monetary and nonmonetary relief afforded the Class Members, the settlement amount represents a substantial recovery.

***B. Notice***

We are also satisfied that the form and content of the notice to the settlement class is adequate. For class notice to be adequate in this case, it must meet two requirements. First, Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Additionally,

principles of due process "require[] that notice be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *In re Nat'l Football League Players*, 821 F.3d at 435 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). The notice documents must provide a detailed description of the settlement, the circumstances leading to it, and the consequences of objecting or opting out. *See In re Diet Drugs Prods. Liab. Litig.*, 369 F.3d 293, 310–12 (3d Cir. 2004).

Here, we find that the requirements of Rule 23 and due process are satisfied by the parties' proposed notice plan. Travelers will provide Epiq with a list of the Class Members' last known mailing address, which Epiq will update by cross-checking on the National Change of Address Data Base, LexisNexis AllFind, True Trace, or other similar address updating databases. (Doc. No. 51-1 at ¶ 53.) Epiq will notify Class Members of the settlement by sending them a copy of the Individual Notice and Claim Form via first class mail. (*Id.*) If an Individual Notice and/or Claim Form are returned as unsendable, Epiq will make efforts to find that class member's current address or send the Individual Notice and Claim Form via email. (*Id.*) Epiq will also set up a toll-free number and a website that will include information on the Settlement and copies of the Individual Notice and Claim Form. (*Id.* at ¶ 55.)

We find that notice via first-class mail, website, and toll-free phone number meets the Rule 23 and due process requirements because it is the best notice practicable under the circumstances and is reasonably calculated to provide actual notice to the Class Members. *See Fulton-Green v. Accolade, Inc.*, No. 18-cv-274, 2019 WL 316722, at *4 (E.D. Pa. Jan. 24, 2019) (holding that notice program was sufficient where it provided direct notice by mail and included notice and information on settlement website); *see also Gallagher v. Charter Foods, Inc.*, No.

20-cv-00049, 2021 WL 2581153, at *6 (W.D. Pa. June 23, 2021) (same); *In re Comcast Corp. Set-Top Cable Television Box Antitrust Litig.*, No. 09-md-2034, 2018 WL 4252463, at *12 (E.D. Pa. Sept. 5, 2018) (similar).

Moreover, we are satisfied that the content of the Individual Notice satisfies Rule 23 and due process. The Individual Notice explains, in plain language, the genesis of the lawsuit, who the interested parties are, how the suit came to be settled, how Class Members' claims will be calculated, the process for making a claim, the process for opting out of the settlement, the process for objecting to the settlement, and the consequences of opting out or objecting to the settlement. (*See generally* Doc. No. 51-1, Ex. C.) As written, the proposed notice will ensure that "interested parties [are apprised] of the pendency of the action and afford them an opportunity to present their objections." *In re Nat'l Football League Players*, 821 F.3d at 435 (quoting *Mullane*, 339 U.S. at 314).

For these reasons, we will preliminarily approve the parties' proposed settlement agreement.

### *VII. Conclusion*

After years of litigation, the Settlement was negotiated by experienced counsel with the help of an experienced mediator and provides significant benefits to the Class Members. The Court is satisfied that preliminary approval is appropriate. Accordingly, Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement is granted. The Final Settlement Hearing is scheduled for Tuesday, April 19, 2022 at 10:00 a.m.

An appropriate order follows.