**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **KYLE STECHERT, et al.,** | **CIVIL ACTION** |
| Plaintiffs, | |
| *v.* | **NO. 17-0784-KSM** |
| **THE TRAVELERS HOME AND MARINE INSURANCE COMPANY, et al.** | |
| Defendants. | |

**<u>MEMORANDUM</u>**

**MARSTON, J.**                                                           **June 27, 2022**

        This is a putative class action lawsuit in which Class Representatives Kyle and Marie

Stechert allege that Defendants, The Travelers Home and Marine Insurance Company and thirty-

seven of its affiliates (together, "Travelers"), breached their duties under certain insurance

policies by providing less than thirty days of Extended Transportation Expense ("ETE")

coverage to insureds whose vehicles were deemed total losses.  The parties entered into a

settlement in May 2021, and the Court preliminarily approved the settlement in November 2021.

(Doc. No. 60.)  Presently before the Court are Plaintiffs' Unopposed Motion for Final Approval

of Class Action Settlement (Doc. No. 69) and Plaintiffs' Unopposed Motion for Award of

Attorneys' Fees and Expenses to Class Counsel and Service Awards to Class Representatives

(Doc. No. 64).  For the reasons below, both motions are granted.

**I.      BACKGROUND**

        **A.      *Background Litigation***

        The Stecherts held a motor vehicle insurance policy with Travelers.  (Doc. No. 1, Ex. A

¶ 2.)  Their policy included ETE coverage, which required Travelers to pay for a rental vehicle

for up to thirty days after their vehicle was deemed a "total loss" unless Travelers determined that less time was reasonably required to replace the totaled vehicle.  (*Id.* ¶¶ 12–13, 16.)  The Stecherts claim Travelers prematurely terminated ETE coverage without determining whether they needed additional time to replace the covered vehicle.  (*Id.* ¶ 6.)  In January 2017, the Stecherts filed this lawsuit on behalf of themselves and all other similarly situated individuals,[1] claiming that Travelers had a practice of prematurely denying ETE coverage without first making a reasonableness determination.  (*Id.*)  The complaint alleges claims for breach of contract and bad faith denial of coverage and seeks a declaratory judgment and other equitable relief.  (*Id.* at 21–28.)  Travelers removed the case to this Court.  (Doc. No. 1.)

Following a period of discovery, Travelers filed a Motion for Summary Judgment (Doc. No. 26), which the Court granted (Doc. No. 35).  The Stecherts appealed, and in September 2019, the United States Court of Appeals for the Third Circuit reversed the grant of summary judgment and remanded the case for further proceedings.  (Doc. No. 38.)  After about six months of additional discovery, the parties engaged in two extensive arm's length negotiation sessions with an experienced mediator and former magistrate judge, the Honorable Diane M. Welsh. (Doc. No. 69-3.)  Following these mediation sessions and additional negotiation, the parties entered into a Stipulation of Settlement and Settlement Agreement (the "Settlement Agreement")[2] in May 2021.[3]  (Doc. No. 69-2.)

---

[1] Specifically, the Stecherts filed suit on behalf of individuals who held policies sold in the Commonwealth of Pennsylvania that included ETE coverage, made a claim for ETE coverage for a total loss vehicle, and received less than thirty days of ETE coverage.  (Doc. No. 1 ¶ 49.)

[2] Unless otherwise noted, capitalized terms not defined herein are given the meaning ascribed in the Settlement Agreement.

[3] This case was initially assigned to the Honorable J. Curtis Joyner and, in July 2021, was reassigned to the Honorable Karen Spencer Marston.

### B.    Settlement Agreement

The Settlement Agreement contains the following provisions.

#### 1.    Payments to Class Members

The Settlement Class consists of individuals who, from January 16, 2011 through May 27, 2021, were issued policies in Pennsylvania that included ETE coverage, whose vehicles were deemed a total loss, and who received less than thirty days' reimbursement for rental vehicles. (*See* Doc. No. 69-1 ¶ 35.) There are 17,155 Class Members with a total of 18,179 claims.[4] (Doc. No. 69 at 26.)

Pursuant to the Settlement Agreement, Travelers will make a scaled payment to each member of the Settlement Class who submits a Valid Claim Form based on the number of days for which they were previously reimbursed for a rental vehicle. (Doc. No. 69-1 ¶ 45.) As detailed in the following chart, the fewer days for which they were previously reimbursed, the greater the payment. (*Id.*)

| Number of Rental Days Previously Paid | Distribution per Class Member | Number of Eligible Class Members |
|---|---|---|
| 1 – 8 | $300 | 5,879 |
| 9 – 15 | $200 | 6,950 |
| 16 – 25 | $75 | 3,425 |
| 26 – 30 | $30 | 910 |

(*Id.*) Based on this scale and the number of Class Members, at the time it entered into the Settlement, Travelers expected to pay over $3,400,000. (*Id.*)

The distribution amount per Class Member is determined in accordance with the Settlement Class List Data. (*Id.* ¶ 44.) The Settlement Class List Data consists of Travelers' claims data, which Travelers has furnished to Plaintiffs. (*Id.* ¶¶ 36, 45.)

---

[4] Certain Class Members have multiple claims.

To receive payment under the Settlement, Class Members must have submitted a Valid Claim Form postmarked by a date no later than forty-five days after the Final Settlement Hearing.  (*Id.* ¶¶ 40, 42, 44.)  A Valid Claim Form is timely if it answers any combination of "Agree" or "I don't remember" to questions asking: (1) whether the Class Member held a Travelers' policy, (2) whether the Class Member was in an accident that resulted in his or her vehicle being deemed a total loss, and (3) whether Travelers paid for a rental car for any period of time.  (*Id.* ¶ 40.)  A Class Member is eligible for payment if he or she answers all three questions with any combination of "Agree" or "I don't remember."  (Doc. No. 69-1, Ex. A at 3.)  Travelers will make payments to the Class Members no later than ninety days after the period for submitting claims.  (Doc. No. 69-1 ¶ 44.)

### 2.   Change of Conduct

Travelers has also agreed to change its conduct.  (*Id.* ¶ 62.)  It has "drafted a new notice regarding ETE coverage, consistent with the language of its policies and Pennsylvania law"; it will reference the new notice in its Pennsylvania state-specific guidelines; and it has discontinued use of the form letter that was previously sent to the Stecherts and other similarly situated policyholders.  (*Id.*)

### 3.   Additional Payments

Finally, separate and apart from the amount to be paid to the Class Members, Travelers has agreed to pay "all of the costs of notice and settlement administration" (*id.* ¶ 51), a service award of $20,000 to each Class Representative (*id.* ¶ 59), and Class Counsel's attorneys' fees and expenses of up to $1,210,000 (*id.*).

### 4.   Release

After the Settlement is finally approved, the Settlement Class will release Travelers from

claims and causes of action related to ETE coverage that were brought or could have been brought in this action.  (*Id.* ¶¶ 31, 79–80.)  The Settlement "does not act to release claims unrelated to ETE benefits as set forth in the Action, and shall not be considered a release of any unrelated rights and benefits available under the Policies."  (*Id.* ¶ 31.)

C.    *Preliminary Approval and the Notice Period*

On November 9, 2021, the Court preliminarily approved the Settlement and appointed Epiq Class Action and Mass Tort Solutions ("Epiq") as Claims Administrator.  (Doc. No. 60.)

On November 18, 2021, counsel for Travelers provided Epiq with an electronic file containing records for the 18,371 Settlement Class Members (the "Class Data").  (Doc. No. 69-5 ¶ 6.)  After the de-duplication, the Class Data contained 17,329 Class Members.  (*Id.* ¶ 7.)  Epiq crosschecked the Class Members' addresses against the United States Postal Service's National Change of Address database and updated 925 records with new addresses.  (*Id.* ¶ 9.)  On January 24, 2022, Epiq mailed Individual Notices to the Class Members.  (*Id.* ¶ 11.)  On March 14, Epiq ran the Class Data through True Trace, a private address search service, found updated addresses for 3,253 Class Members, and mailed another Individual Notice to those Class Member.[5]  (*Id.* ¶ 14.)

Epiq also created a website, www.StechertClassAction.com, that Class Members could visit to obtain information about the Settlement.  (*Id.* ¶ 28.)  As of May 31, 2022, the website had been visited in 10,549 unique sessions.  (*Id.* ¶ 31.)  Epiq also established a toll-free information line to provide information and receive inquiries about the Settlement.  (*Id.* ¶ 32.)  As of May 31,

---

[5] Under the terms of the Settlement Agreement, Epiq was supposed to run the Class Data through True Trace prior to mailing the Individual Notices.  To ensure the terms of the agreement were followed to a T, the Court extended the deadline for the 3,253 Class Members to submit a claim, opt out, or raise any objection to May 27, 2022.  (Doc. No. 69-5 ¶¶ 14–15.)  The parties also had email addresses for 2,544 of the 3,253 Class Members who received an additional Individual Notice.  (*Id.* ¶ 18.)  Epiq also sent those Class Members an Individual Notice through email.  (*Id.*)

2022, the toll-free line had received 366 calls. (*Id.* ¶ 33.)

### D. Claim Form Submissions, Opt-Outs, and Objections

In all, by June 9, 2022, Epiq received 3,652 Claim Forms, reflecting a return rate of 21.29%. (Doc. No. 70 at 2.) Only 17 Class Members opted out of the Class, and no one objected to the Settlement. (*Id.* at 3.)

\*       \*       \*

On February 22, 2022, Plaintiffs filed an Unopposed Motion for Award of Attorneys' Fees and Expenses to Class Counsel and Service Awards to Class Representatives. (Doc. No. 64.) And on May 31, 2022, Plaintiffs filed an Unopposed Motion for Final Approval of Class Action Settlement. (Doc. No. 69.) Plaintiffs filed supplemental briefs in support of both motions on June 10, 2022. (Docs. No. 70, 71.) The Court held a final approval hearing on June 15, 2022.

## II.   THE SETTLEMENT

Before considering the merits of the Settlement, the Court must determine whether to certify the Settlement Class.

### A. The Settlement Class Is Certified

"For a class action to have preclusive effect and bind absent class members, a class must first be certified." *In re Nat'l Football League Players' Concussion Injury Litig.*, 307 F.R.D. 351, 370 (E.D. Pa. 2015). A court may certify class actions for the sole purpose of settlement. *In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 476 (E.D. Pa. 2010) (citing *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 786 (3d Cir. 1995)). In these situations, the court "approves preliminary certification of the

class,"[6] but reserves "[f]inal certification" until it "rules on whether the final settlement agreement is to be approved."  *Id.*  When a court certifies a class for settlement, "it must first find that the class satisfies all the requirements of Rule 23."  *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 300 (3d Cir. 2005).  The "central inquiry . . . is the adequacy of representation."  *Id.*

Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure set forth the requirements for class certification.  Under Rule 23(a), a class action is allowable only if:

(1)    the class is so numerous that joinder of all members is impracticable;

(2)    there are questions of law or fact common to the class;

(3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)    the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *see also Reyes v. Netdeposit, LLC*, 802 F.3d 469, 482 (3d Cir. 2015) ("All potential classes must initially satisfy four prerequisites to be certified: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.").

If the Rule 23(a) conditions are met, then a case may proceed as a class action if one of the conditions of Rule 23(b) is also satisfied.  Here, Plaintiffs seek certification for a class under Rule 23(b)(3), which requires that "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3); *see also Reyes*, 802 F.3d at 482 (explaining that the plaintiff must demonstrate "predominance and superiority" for certification under Rule 23(b)(3)).

---

[6] When the Court preliminarily approved the Settlement, we also preliminarily certified the class. (*See* Docs. No. 60, 61.)

Here, the Settlement Class consists of "[a]ll first party total loss vehicle claimants of personal lines private passenger policies issued by . . . Travelers entities in Pennsylvania . . . , with a date of loss from January 16, 2011 to May 27, 2021, who were paid for 1–30 days under rental reimbursement extended transportation expenses coverage."  (Doc. No. 69-1 ¶ 35.)  The Court considers whether this class satisfies the requirements set forth in Rules 23(a) and 23(b) in turn.

### 1.    Rule 23(a) Requirements

As noted above, Rule 23(a) sets forth four preliminary requirements for a class to be certified:  (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See Reyes*, 802 F.3d at 482.  The Settlement Class satisfies all four requirements.

*Numerosity.*  While "[t]here is no magic number of class members needed for a suit to proceed as a class action," the Third Circuit has held that "numerosity is generally satisfied if there are more than 40 class members."  *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 426 (3d Cir. 2016).  Here, the class includes 17,155 individuals, so joinder is impracticable.  (Doc. No. 69 at 26.)  We agree that a class of over 18,000 people is sufficiently large to satisfy Rule 23(a)'s numerosity requirement.

*Commonality.*  As the Third Circuit has explained, "[a] putative class satisfies Rule 23(a)'s commonality requirement if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class."  *In re Nat'l Football League Players*, 821 F.3d at 426–27 (quoting *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013)).  It is "easy enough," to meet the requirement, provided all members of the class have claims that are capable of class-wide resolution.  *Id.*  Commonality is met in this case because each member of the proposed class held a Travelers policy that included ETE coverage.  (Doc. No. 69-1 ¶ 35.)  Thus,

this case presents a sufficient degree of commonality, even if the amount of damages to which each class member is entitled varies.

*Typicality.*   There is a "'low threshold' for typicality"; provided "the interests of the class and the class representative are aligned," courts will find typicality even when class members' claims are only legally similar, and not factually similar.   *In re Nat'l Football League Players*, 821 F.3d at 427–28 (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182–83 (3d Cir. 2001)).   The Stecherts' claims are both legally and factually similar to those of other members of the putative class.   Like the Stecherts, all of the Class Members held policies that included ETE coverage, were in an accident that caused their vehicles to be deemed a total loss, and received one to thirty days of rental car reimbursement.   (Doc. No. 69-1 ¶ 35.) These common facts led to the proposed class's common legal claims for breach of contract and bad faith.   Although the Class Members may differ in the number of rental days for which they have already been reimbursed, there is no indication that the Stecherts are atypical in the number of days for which they were reimbursed.   Accordingly, the proposed class meets Rule 23(a)'s typicality requirement.

*Adequacy of Representation.*   Courts considering adequacy of representation examine both "the qualifications of class counsel and the class representatives."   *In re Nat'l Football League Players*, 821 F.3d at 428.   Under this prong of the analysis, courts seek "to root out conflicts of interest within the class" and to "uncover conflicts of interest between the named parties and the class they seek to represent."   *Id.* at 428, 430 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)).   "A class representative must represent a class capably and diligently," but this is a low bar: "'a minimal degree of knowledge' about the litigation is adequate."   *Id.* at 430 (quoting *New Directions Treatment Servs. v. City of Reading*, 490 F.3d

293, 313 (3d Cir. 2007)).  "[T]he linchpin of the adequacy requirement is the alignment of

interests and incentives between the representative plaintiffs and the rest of the class."  *In re*

*Cmty. Bank of N. Va.*, 795 F.3d at 393 (quoting *Dewey v. Volkswagen Aktiengesellschaft*, 681

F.3d 170, 183 (3d Cir. 2012)).

First, the class representative must demonstrate adequate standing.  "A litigant must be a

member of the class which he or she seeks to represent at the time the class action is certified by

the district court."  *Sosna v. Iowa*, 419 U.S. 393, 403 (1975) (string citation omitted).  Here, the

Stecherts allege that they held the Travelers policy at issue and that Travelers refused to give

them thirty days of rental car coverage after their car was deemed a total loss.  Therefore, they

are Class Members and have standing to pursue claims on behalf of the class.

Second, there is no conflict of interest between the Stecherts and the other Class

Members.  The Stecherts' alleged harm—underpaid rental vehicle reimbursement—is factually

and legally identical to the harm allegedly suffered by every other Class Member.  The Stecherts

have represented the class capably and diligently from the onset of this litigation.  They

"reviewed documents, were deposed, [and] overcame significant odds in successfully appealing

to the Third Circuit."  (Doc. No. 64 at 16.)

In considering the adequacy of class counsel, courts look to whether the attorneys

"(1) possessed adequate experience; (2) vigorously prosecuted the action; and (3) acted at arm's

length from the defendant."  *In re Gen. Motors Corp.*, 55 F.3d at 801.  The Third Circuit has

indicated that courts should consider the non-exhaustive list of factors in Rule 23(g) for

appointing counsel in determining the adequacy of representation.  *See In re Nat'l Football*

*League Players*, 821 F.3d at 429; *see also Sheinberg v. Sorensen*, 606 F.3d 130, 132 (3d Cir.

2010) ("Although questions concerning the adequacy of class counsel were traditionally

analyzed under the aegis of the adequate representation requirement of Rule 23(a)(4) of the Federal Rules of Civil Procedure, those questions have, since 2003, been governed by Rule 23(g).").  Those factors include counsel's work in the instant class action, experience in handling class actions or other kinds of complex litigation, knowledge of the applicable laws, and resources available for representing the class.  Fed. R. Civ. P. 23(g)(1)(A).  Additionally, the court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).

Under each of the Rule 23(g)(1)(A) factors, Class Counsel—Richard M. Ochroch, Brett N. Benton, and Andrew R. Ochroch from the law firm of Richard M. Ochroch & Associates, P.C. and Marc P. Weingarten and James A. Barry from The Locks Law Firm—are qualified to "fairly and adequately represent the interests of the class."  All five attorneys are experienced in handling complex litigation generally, class actions specifically, and the breach of contract and bad faith claims asserted in this case.  (*See* Docs. No. 64-4, 64-5.)  This group of attorneys is particularly experienced in the insurance context—almost all of the attorneys have experience advising plaintiffs in coverage disputes with insurers.  (*Id.*)  In fact, the attorneys from the law firm of Richard M. Ochroch & Associates, P.C. have represented plaintiffs in similar class actions against other insurers *arising out of substantially the same set of facts*.  (*See* Doc. No. 58 at 31:14–32:9.)  Indeed, the Philadelphia Court of Common Pleas has granted final approval of a class action settlement in one such case.  *See Schiffman v. Gen. Ins. Co. of Am.*, No. 101100155 (Phila. Ct. Common Pleas July 16, 2015).

Not only are the attorneys well qualified to pursue this suit, but they have done so with vigor.  Prior to filing the complaint, they "spent time investigating the claims, Travelers' corporate structure, identifying causes of action, strategizing with co-counsel, and drafting

discovery." (Doc. No. 64 at 25.) They have also "obtain[ed] vast amounts of discovery and succeed[ed] in the Third Circuit." (*Id.*) Moreover, the parties worked with the Honorable Diane M. Welsh, an experienced mediator and former magistrate judge, to facilitate arm's length negotiations, which weighs in favor of finding adequacy. *See Fulton-Green v. Accolade, Inc.*, Civil Action No. 18-274, 2019 WL 4677954, at *6 (E.D. Pa. Sept. 24, 2019) (collecting cases).

In sum, the Rule 23(a) prerequisites for class certification are satisfied.

## 2. Rule 23(b)(3) Requirements

Because the Settlement Class satisfies the requirements set forth in Rule 23(a), the Court must now consider whether the class satisfies the conditions set forth in Rule 23(b)(3).[7]

Under Rule 23(b)(3), the Court must find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The key issue under the predominance factor is "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Windsor*, 521 U.S. at 623. The Third Circuit has counseled that courts should be "more inclined to find the predominance test met in the settlement context."[8] *In re Natl' Football League Players*, 821 F.3d at 434 (quoting *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 304 n.29 (3d Cir. 2011) (en banc)).

The predominance requirement is satisfied in this case. The claims of all members of the putative class rely on common questions of fact—the Class Members' claims all turn on whether

---

[7] Plaintiffs can seek certification under one of three avenues set forth in Rule 23(b). Here, Plaintiffs seek certification pursuant to Rule 23(b)(3).

[8] To be clear, the fact that all members of the proposed class have an interest in the settlement itself does not help establish predominance. *See Windsor*, 521 U.S. at 622–23. Nonetheless, the fact that Travelers has agreed to settle not just with the Stecherts, but with thousands of similarly situated policyholders, is a strong signal of the predominance of common factual and legal questions among the policyholders' claims.

they held ETE coverage, used that ETE coverage to pay for a rental vehicle after the insured

vehicle was deemed a total loss, and were paid one to thirty days of rental vehicle reimbursement

from Travelers.  (*See* Doc. No. 69 at 43.)  Likewise, each Class Member's claim raises an

identical question of law: whether Travelers' practices regarding the early termination of ETE

coverage breached the governing insurance policies and violated Pennsylvania law.  (*See id.*)

Taken together, these common questions of law and fact predominate over individual factual

questions, such as how many days each Class Member was not paid a rental reimbursement.  *Cf.*

*Brooks v. Educators Mut. Life Ins. Co.*, 206 F.R.D. 96, 104–08 (E.D. Pa. 2002) (holding that

common questions predominated in dispute over insurer's alleged failure to pay for anesthesia

coverage in accordance with its insurance policies where all policies at issue contained identical

language for determining availability of anesthesia coverage).

      The last requirement for certifying a class is that "a class action is superior to other

available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P.

23(b)(3).  When evaluating this requirement, courts consider "the class members' interests in

individually controlling litigation, the extent and nature of any litigation, the desirability or

undesirability of concentrating the litigation, and the likely difficulties in managing a class

action."  *In re Nat'l Football League Players*, 821 F.3d at 435 (citing Rule 23(b)(3)(A)–(D)).

Superiority can be satisfied where the settlement prevents "duplicative lawsuits and enables fast

processing of a multitude of claims."  *Id.* (quoting *In re Nat'l Football League Players'*

*Concussion Inj. Litig.*, 307 F.R.D. 351, 382 (E.D. Pa. 2015)); *see also Sullivan*, 667 F.3d at 312.

      In this case, an analysis of superiority weighs in favor of certifying the class.  Only 17

Class Members opted out of the Settlement, and no one objected to it.  (*See* Doc. No. 70 at 2.)

This relatively small number of opt outs illustrates the superiority of adjudicating this

controversy through a class action.  *See In re Nat'l Football League Players*, 307 F.R.D. at 382 (finding superiority in part because relatively few class members had opted out of the class). Further, the relatively small size of the claims to which each class member is entitled would make it practically difficult—if not impossible—for individual Class Members to control their own suits.  (Doc. No. 69 at 45.)

It is also desirable to concentrate litigation in this forum.  The Court recognizes that the Class Members are spread throughout the Commonwealth of Pennsylvania (Doc. No. 69-1 ¶ 35) and the parties have not ascertained the exact number of Class Members located in the Eastern District of Pennsylvania (as opposed to the Middle or Western Districts) (Doc. No. 58 at 35:7– 10).  Nonetheless, given that the Stecherts reside within this judicial district, the remainder of the Class Members reside *somewhere* within Pennsylvania, and no other forum readily presents itself as more desirable than this one, we find that it is desirable to concentrate litigation in this Court. *Cf. Zeno v. Ford Motor Co.*, 238 F.R.D. 173, 197–98 (W.D. Pa. 2006) (finding it desirable to concentrate litigation in the Western District of Pennsylvania where "the class includes purchasers only in the Commonwealth [of] Pennsylvania").

Accordingly, both of the requirements set forth in Rule 23(b)(3) are satisfied.

\* \* \*

Because the requirements of Rules 23(a) and 23(b)(3) are satisfied, we will certify the Settlement Class.

### B.     *Notice to the Settlement Class Was Adequate*

Having finally certified the Settlement Class, we must now evaluate the adequacy of notice to the Class Members.  *Fein v. Ditech Fin., LLC*, No. 5:16-cv-00660, 2017 WL 4284116, at \*6 (E.D. Pa. Sept. 27, 2017).  Rule 23(c)(2)(B) requires that the class receive "the best notice

that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Due process also requires that "notice be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *In re Nat'l Football League Players*, 821 F.3d at 435 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Notice may be delivered through United States mail, electronically, or other means and must "clearly and concisely state":

| (i) | the nature of the action; |
|-----|---------------------------|
| (ii) | the definition of the class certified; |
| (iii) | the claims, issues, or defenses; |
| (iv) | that a class member may enter an appearance through an attorney if the member so desires; |
| (v) | that the court will exclude from the class any member who requests exclusion; |
| (vi) | the time and manner for requesting exclusion; and |
| (vii) | the binding effect of a class judgment on members under Rule 23(c)(3). |

*Id.*

In granting preliminary approval, the Court found that the parties' notice plan satisfied these requirements (Doc. No. 60 at 19), and we find no reason to change that conclusion following the plan's execution. Travelers provided Epiq with each Class Member's last-known address. (Doc. No. 69-5 ¶ 6.) Epiq crosschecked the addresses with the National Change of Address Database, updated the records as appropriate, and mailed Individual Notices. (*Id.* ¶¶ 6–11.) 1,679 of the notices mailed were returned as undeliverable, which yields a 90.31%

15

deliverable rate.  (*Id.* ¶ 13.)  After the initial mailing, Epiq further crosschecked the addresses

through a private service, True Trace.  (*Id.* ¶ 14.)  The True Trace search revealed different

addresses for 3,253 Class Members.  (*Id.* ¶ 15.)  Epiq mailed an additional copy of the Individual

Notice to those addresses, and only 381 were returned as undeliverable, representing an 89.84%

deliverable rate.[9]  (*Id.* ¶ 17.)  Given the relatively high deliverable rate, the Court finds that the

notice satisfied the requirements of Rule 23(c)(2)(B) and comports with due process.  *See Wood*

*v. Saroj & Manju Invs. Phila. LLC*, CIVIL ACTION NO. 19-2820-KSM, 2021 WL 1945809, at

*5 (E.D. Pa. May 14, 2021) (finding a 92.8% deliverable rate "reasonably calculated to provide

notice to all potential class members").

### C. The Settlement Is Fair, Reasonable, and Adequate

Under Rule 23, a court may approve a settlement "only on a finding that it is fair,

reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  District courts have discretion to decide

whether to grant final approval to a proposed settlement.  *Girsh v. Jepson*, 521 F.2d 153, 156 (3d

Cir. 1975).  Settlements are entitled to "an initial presumption of fairness" if "the court finds that:

(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the

proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of

the class objected."  *In re Gen. Motors Corp.*, 55 F.3d at 785.  However, where, as here, the

parties seek settlement approval and final class certification simultaneously, the Court must

examine the fairness of the settlement agreement "even more scrupulous[ly] than usual."  *In re*

*Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004).

The Settlement is entitled to an initial presumption of fairness.  The parties negotiated the

settlement at arm's length, with assistance from the Honorable Diane M. Welsh.  (Doc. No. 69 at

---

[9] Epiq also emailed an additional copy of the Individual Notice to 1,426 of these Class Members. (Doc. No. 69-5 ¶ 22.)

10.)  Prior to reaching settlement, the parties conducted discovery, the case made it to the summary judgment stage, and based on the district court's ruling, the parties appealed to the Third Circuit.  (*Id.*)  Then, after the Third Circuit reversed the district court's ruling on summary judgment, the parties conducted *additional* discovery.  (*Id.*)  Additionally, Class Counsel has experience with similar litigation.  (*Id.*)  And, critically, *no one* in the class objected to the Settlement.  (*Id.*)

Although the Settlement is entitled to an initial presumption of fairness, we must consider the following *Girsh* factors to confirm that the settlement is fair, reasonable and adequate:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risk of establishing damages; (6) the risk of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*See Girsh*, 521 F.2d at 157.  We consider each of these factors in turn.

*Complexity, Expense, and Likely Duration of the Litigation.*  This is a complicated litigation that has drawn on for years and would likely continue to drag on absent Settlement. This action raises unique issues regarding Pennsylvania insurance law, many of which were only first decided on the Third Circuit appeal in this case.  (*See* Doc. No. 69 at 32.)  Plaintiffs also face obstacles in terms of standing, class certification, and on other merits issues.  (*Id.*) Moreover, Travelers has a complex corporate structure—38 different Travelers entities are party to the Settlement, which could complicate class certification and recovery were the Settlement not approved.  (*Id.*)  This litigation has been in the works for the past six years and would "certainly hit the 10-year mark" were it to continue.  (*See* June 15, 2022 Hr'g Tr. at 7:22.)  Thus, this first factor weighs in favor of approval.

17

*Reaction of the Class to the Settlement.*  The Settlement Class reacted very favorably to the Settlement.  There was a 21.8% return rate,[10] only 17 Class Members opted out of the Settlement, and, perhaps most importantly, there are **_no objections_**.  (Doc. No. 70 at 2.)  This factor weighs heavily in favor of approval.

*Stage of Proceedings and Amount of Discovery Completed.*  The parties litigated this case for five years, including on appeal, before reaching the Settlement.  (Doc. No. 69 at 34.)  The parties have conducted two substantial rounds discovery.  (*Id.*)  There is no doubt Class Counsel knew the case well before negotiating the Settlement with Travelers.  (*Id.*)  Given the extensive discovery and the lengthy mediation sessions with the Honorable Diane M. Welsh, this factor weighs in favor of approving the Settlement.

*Risks of Establishing Liability and Damages.*  There are risks with establishing liability and damages.  Defendants contest liability and damages, and these risks were realized when the Honorable J. Curtis Joyner granted summary judgment for Travelers.  *See Stechert v. Travelers Home & Marine Ins. Co.*, CIVIL ACTION NO. 17-CV-784, 2018 WL 2267447 (E.D. Pa. May 17, 2018), *rev'd and remanded*, 779 F. App'x 958 (3d Cir. 2019).  Given these risks, which have already borne out, both of these factors weigh in favor of approving the Settlement.

*Risks of Maintaining a Class Action Through Trial.*  There are also risks with maintaining a class action through trial.  Were the Settlement rejected, Defendants would hotly contest the propriety of certification.  (Doc. No. 69 at 36; *see also* June 15, 2022 Hr'g Tr. at 9:21.)  Even if the Court were to certify a class, Defendants would have almost certainly appealed, which would have further extended the litigation.  (Doc. No. 69 at 36.)  Given the risks of achieving certification and maintaining a class throughout trial (and given the likelihood that the fight over

---

[10] This is a notably high return rate—in the top 25% of return rates compared to other class actions.  (*See* June 15, 2022 Hr'g Tr. at 8:9–19.)  The average return rate is somewhere around 9%.  (*Id.*)

class certification would further delay the resolution of this case), this factor also weighs in favor of approval.

*Ability of Defendants to Withstand a Greater Judgment.* "This factor assesses the ability of defendants to withstand a greater judgment, and is 'most clearly relevant where a settlement in a given case is less than would ordinarily be awarded but the defendant's financial circumstances do not permit a greater settlement.'" *In re Nat'l Football League Players*, 307 F.R.D. at 394 (quoting *Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241, 254 (E.D. Pa. 2011)). "However, when there is no 'reason to believe that [d]efendants face any financial instability[,] . . . this factor is largely irrelevant.'" *Id.* There is no reason to believe Travelers is financially unstable, but the fact that it could withstand a larger judgment weighs neither in favor of nor against approving the Settlement.

*The Reasonableness of the Settlement in Light of the Best Possible Recovery and All the Attendant Risks of Litigation.* The Settlement is reasonable in light of the best possible recovery and attendant risks of litigation. Travelers will pay the Settlement Class $3,636,915. On top of the funds to the Settlement Class, Travelers will pay costs and fees to class counsel, Class Representative service awards, the costs of settlement administration, and the full cost of mediation. (Doc. No. 69 at 38.) In addition to monetary relief, the Settlement provides injunctive relief—Travelers has drafted a new notice regarding ETE coverage and has discontinued use of the form letter that was previously sent to the Stecherts and other similarly situated policyholders. (*Id.*)

The maximum possible recovery for the Settlement Class's 18,179 ETE claims would be $10,725,069. (*Id.*) The monetary benefit to the Settlement Class alone represents approximately 34% of the maximum possible recovery. The Court is unable to quantify the injunctive relief but

recognizes its value to future Travelers' policyholders, so the percentage of recovery is much higher than 34% when factoring in the value of the injunctive relief.

As discussed above, there is no guarantee the Settlement Class would be awarded the maximum possible recovery. There are a number of risks attendant with continuing the litigation, including the chance the class would not be certified and obstacles to proving liability and damages. Given the unlikelihood of the Settlement Class attaining the maximum possible recovery and the much more real possibility that they would attain less than the settlement amount (and perhaps even nothing), the monetary and injunctive value of the Settlement fall well within the range of reasonableness. *See McDonough v. Toys R Us, Inc.*, 80 F. Supp. 3d 626, 646 (E.D. Pa. 2015) (finding a settlement that represented approximately 24% of the estimated actual damages reasonable); *see also In re Linderboard Antitrust Litig.*, 321 F. Supp. 2d 619, 633 (E.D. Pa. 2004) (approving a settlement that represented approximately 55% of the maximum available recovery) (collecting cases).

Given the value of the Settlement and the undeniable risks with continuing the litigation, the final two factors both weigh in favor of approval.

\* \* \*

The Settlement is fair, reasonable, and adequate. It is entitled to a presumption of fairness, and that presumption is supported by the *Girsh* factors, eight of which weigh in favor of approval and one of which is neutral. Accordingly, the Court approves the Settlement.

## III.   ATTORNEYS' FEES, COSTS, AND SERVICE AWARD

Class Counsel requests the Court award attorneys' fees and costs, and Plaintiffs request the Court grant the Class Representatives a service award. (Doc. No. 64.) We consider each request in turn.

A.      *Attorneys' Fees*

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  Attorneys' fees may be calculated using either the percentage-of-recovery method or the lodestar method.  *See Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481, 496 (3d Cir. 2017).  Where, as here, the settlement funds come from a common fund, courts generally evaluate the attorneys' fees' reasonableness using the percentage-of-recovery method, with a lodestar crosscheck.[11]  *Id.*

1.      **Percentage-of-Recovery Method**

"The percentage-of-recovery approach compares the amount of attorneys' fees sought to the total size of the fund."  *Id.*  Courts consider the following factors in assessing the reasonableness of a request for attorneys' fees:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or the fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by counsel; and (7) awards in similar cases.

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000).  Courts also generally consider three additional factors:

> (8) [T]he value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations, (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained, and (10) any

_____

[11] Although the attorneys' fees are being paid separate and apart from the distribution to the Settlement Class, the monies for both originate from Travelers, so this is a "constructive common fund." *See Dewey v. Volkswagen Aktiengesellschaft*, 558 F. App'x 191, 197 (3d Cir. 2014) ("However, where the reality is that the fund and the fee are paid from the same source—in this case, Volkswagen—the arrangement is, for practical purposes, a constructive common fund, and courts may still apply the percent-of-fund analysis in calculating attorney's fees." (cleaned up)).

innovative terms of settlement.

*In re Diet Drug*, 582 F.3d 524, 541 (3d Cir. 2009) (citing *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 338 (3d Cir. 1998)).

Class Counsel requests $1,187,995.18 in attorneys' fees, representing approximately 33% of the monetary distribution to the Settlement Class. (Doc. No. 64 at 23.) As noted above, the injunctive relief cannot be quantified, but it certainly represents recovery for the Settlement Class and future Travelers' policyholders, rendering the requested fees an even lower percentage of the overall benefit to the Settlement Class. Each of the *Gunter/Prudential* factors supports a finding that the requested fees are reasonable.

*Size of the Fund Created and Number of Beneficiaries.* Travelers will be distributing $3,636,915. This is a sizeable fund, representing over 30% of the maximum possible recovery, and its size is augmented by the fact that Travelers has agreed to change its conduct and no longer engages in the conduct in dispute. *See Mirakay v. Dakota Growers Pasta Co., Inc.*, Civil Action No. 13–cv–4429 (JAP), 2014 WL 5358987, at *13 (D.N.J. Oct. 20, 2014) (finding this factor weighed in favor of reasonableness because "an even broader spectrum of persons, whether class members or not, will benefit from the injunctive provisions of the settlement"). This factor supports the award of the requested fees.

*Presence or Absence of Objections.* The Individual Notice alerted the Settlement Class that Class Counsel would request attorneys' fees and expenses not to exceed $1,210,000. (Doc. No. 64 at 23.) No one has objected to any part of the Settlement, including to the $1,210,000 carveout for attorneys' fees. The lack of objection from the Settlement Class weighs in favor of approval.

*Skill and Efficiency of Attorneys Involved.* Class Counsel is skilled, efficient, and vigorously litigated this matter, including on a successful appeal to the Third Circuit. In

preliminarily approving the Settlement, the Court found Richard M. Ochroch, Brett N. Benton, and Andrew R. Ochroch from the law firm of Richard M. Ochroch & Associates, P.C. and Marc P. Weingarten and James A. Barry from The Locks Law Firm competent to serve as Class Counsel (Doc. No. 60 at 10), and nothing has changed to undermine the Court's confidence in their ability.  Both firms worked collaboratively throughout the litigation, with the attorneys from Richard M. Ochroch & Associates taking the lead on the insurance-related and other substantive issues and the attorneys from the Locks Firm taking the lead on the class-related issues.  (*See* June 15, 2022 Hr'g Tr. at 19:2–15.)

As detailed in the chart that follows, the attorneys serving as Class Counsel have been practicing for years, with several of them at the pinnacle of their careers:

| *Attorney* | *Years Out of Law School* |
|---|---|
| Richard Ochroch | 48 |
| Brett Benton | 18 |
| Andrew Ochroch | 9 |
| Marc Weingarten | 47 |
| James Barry | 14 |

(*See* Doc. No. 64 at 33.)  These attorneys also have experience litigating similar insurance and large-scale commercial matters:  Richard M. Ochroch & Associates focuses its practice in areas of insurance law and bad faith, and the Locks Law Firm specializes in class and collection actions and other areas of complex litigation.  (Doc. No. 64-4 at 3.)  And all five attorneys have experience advising plaintiffs in similar coverage disputes with insurers.  (*Id.*)  In fact, the attorneys from Richard M. Ochroch & Associates have represented plaintiffs in similar class actions against other insurers arising out of substantially the same set of facts.  (*See* Doc. No. 58 at 31:14–32:9.)  Indeed, the Philadelphia Court of Common Pleas has granted final approval of a class action settlement in one such case.  *See Schiffman v. Gen. Ins. Co. of Am.*, No. 101100155 (Phila. Ct. Common Pleas July 16, 2015).

Travelers was likewise represented by high-quality counsel from national law firms Dentons US LLP and Marshall Dennehey Warner Coleman & Goggin with experience representing clients in high stakes matters.  (Doc. No. 64 at 25.)

The attorneys representing both parties are well-credentialed, highly qualified, and have years of experience litigating similar matters, so this factor weighs in favor of finding the requested fees reasonable.

*Complexity and Duration of Litigation.*  As discussed above, Class Counsel have been preparing for and litigating this case for over six years.  (Doc. No. 64 at 25.)  They have investigated claims against Travelers, engaged in years of discovery, and briefed a motion for summary judgment.  (*Id.*)  Even after losing on summary judgment, Class Counsel persisted— they appealed to the Third Circuit and won.  (*Id.*)  Given the length and complexity of this litigation, this factor weighs in favor of approving the fee request.

*Risk of Nonpayment.*  Class Counsel undertook this case on a contingent basis.  (*Id.* at 26.)  "Courts routinely recognize the risk created by undertaking an action on a contingency fee basis militates in favor of approval."  *Whiteley v. Zynerba Pharms., Inc.*, CIVIL ACTION NO. 19-4959, 2021 WL 4206696, at *12 (E.D. Pa. Sept. 16, 2021) (quoting *In re Schering-Plough Corp. Enhance ERISA Litig.*, Civil Action No. 08–1432 (DMC)(JAD), 2012 WL 1964451, at *7 (D.N.J. May 31, 2012)).  Class Counsel have worked on this litigation for six years but have not yet been paid a dime.  They took the risk they would never be able to recoup fees for any of their efforts, including the appeal to the Third Circuit, so this factor weighs in favor of awarding the fees requested.

*Time Devoted by Class Counsel.*  Altogether, Class Counsel have devoted over 1,800

hours of attorney time to this litigation over the past six years.[12]  (Doc. No. 64-4 at 12; Doc. No. 64-5 at 4.)  As noted above, this is a complex litigation that involved two rounds of discovery and an appeal to the Third Circuit.  (Doc. No. 64 at 26–27.)  At the final approval hearing, counsel for Travelers lauded Class Counsel and their involvement in the Settlement Administration, which is typically handled by the defendants alone.  (June 15, 2022 Hr'g Tr. at 29:6–9.)  The amount of time devoted is high enough for Class Counsel to have adequately represented the Class's interest but not so high as to suggest inefficiencies, so the Court finds this factor weighs in favor of approving the fee request.

*Awards in Similar Cases.*  Courts using the percentage-of-recovery method to calculate attorneys' fees generally approve fees ranging "from roughly 20-45%."  *Marby v. Hildebrandt*, Civil Action No. 14-5525, 2015 WL 5025810, at *4 (E.D. Pa. Aug. 24, 2015) (collecting cases).  The fees Class Counsel have requested represent roughly 33% of the distribution to the Settlement Class, and an even smaller portion of the Settlement when the injunctive relief is factored in.  Courts regularly approve fee awards around this size.  *See Fein v. Ditech Fin., LLC*, No. 5:16-cv-00660, 2017 WL 4284116, at *12 (E.D. Pa. Sept. 27, 2017) (finding a fee award that represented 33% of the settlement reasonable) (collecting cases).

*Value of Benefits Attributable to Class Counsel's Efforts.*  No government agencies or any other institutions investigated Travelers' ETE practices or pursued these claims against Travelers, and there is no evidence that anyone other than Class Counsel initiated this action, so this factor weighs in favor of awarding the fees requested.  *See Pinnell v. Teva Pharms. USA, Inc.*, CIVIL ACTION NO. 19-5738, 2021 WL 5609864, at *1 n.2 (E.D. Pa. June 11, 2021) (finding that this factor weighed in favor of awarding the requested fees where there was no

---

[12] This total does not include time expended by Andrew Bell, as Mr. Bell left the Locks Law Firm in 2018 but did not leave his billing records.  (Doc. No. 64-5 at 4.)

evidence that anyone other than class counsel initiated the action).

*Percentage that Would Have Been Awarded in Private Contingency Arrangement.* Class Counsel requests fees that represent approximately 33% of the distribution to the class. (Doc. No. 64 at 29.) 33% is a standard contingency award, *see Boone v. City of Philadelphia*, 668 F. Supp. 2d 693, 714 (E.D. Pa. 2009) (explaining that the median attorneys' fee award in class actions is one-third, or 33%), and is far lower than the 40% individual contingency fee the Stecherts agreed to at the onset of this case (Doc. No. 64 at 29).

*Innovative Terms of Settlement.* The Settlement is two pronged: it includes four tranches of recovery available to Class Members based on how many days of rental coverage they previously received, and Travelers agreed to change its conduct going forward. (Doc. No. 64 at 29.) Although these terms are effective for the facts of this case, neither is particularly innovative. Despite the standard terms, "this factor neither weighs in favor nor detracts from a decision to award attorneys' fees." *In re Processed Egg Products Antitrust Litig.*, No. 08–md–2002, 2012 WL 5467530, at *6 (E.D. Pa. Nov. 9, 2012).

\* \* \*

Considering these factors together, the Court finds the requested attorneys' fees reasonable under the percentage-of-recovery method.

### 2.    Lodestar Crosscheck

The Third Circuit has recommended that courts crosscheck the reasonableness of the attorneys' fees request using the lodestar method. *Gunter*, 223 F.3d at 195 n.1. "The purpose of the cross-check is to ensure that the percentage approach does not result in an 'extraordinary' lodestar multiple or windfall." *Whiteley*, 2021 WL 4206696, at *13 (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 285 (3d Cir. 2001)). "The lodestar method 'multiplies the number of

hours counsel worked on the case by a reasonable hourly billing rate for such services,' and

compares that amount to the attorneys' fees sought." *Halley*, 861 F.3d at 496 (quoting *Sullivan*,

667 F.3d at 330).

As detailed in the chart below, Class Counsel have expended 1,833.72 hours on this case,

which correlates to a lodestar of $1,140,538.  (Doc. No. 71 at 3.)

| Attorney | Hours Worked | Hourly Rate | Individual Lodestar |
|---|---|---|---|
| Richard Ochroch | 762.00 | $750 | $571,500.00 |
| Brett Benton | 161.43 | $550 | $88,786.50 |
| Andrew Ochroch | 582.36 | $450 | $262,062.00 |
| Marc Weingarten | 185.97 | $750 | $139,477.50 |
| Jonathan Miller | 13.70 | $600 | $8,220.00 |
| James Barry | 128.26 | $550 | $70,543.00 |

(*Id.*)  The lodestar does not include time worked by Andrew Bell, who left the Locks Law Firm

in 2018 and did not leave his billing records, nor does it include time worked by

paraprofessionals.  (Doc. No. 64 at 31.)

The Court finds both the hourly rate and the number of hours worked reasonable.  The

reasonableness of hourly rates is generally assessed by reference to "prevailing market rates in

the community," and based on the skill and experience of the attorneys and staff who worked on

the matter.  *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001).  Joseph C. Crawford, a

shareholder at Hangley Aronchick Segal Pudlin & Schiller, declared that Richard Ochroch,

Andrew Ochroch's and Brett Benton's hourly rates are "fair, reasonable, and within the range of

market rates in this region for an attorney of [their] experience, skill, and reputation practicing

complex commercial litigation."  (Doc. No. 64-6 ¶¶ 10–12.)  We agree.  Class Counsel have

years of experience and are highly skilled in insurance disputes and other complex litigations

such as this.  And their hourly rates fall well within the range of rates charged by other attorneys

practicing complex litigation in Philadelphia. *See Whiteley*, 2021 WL 4206696, at *14 (finding

that hourly rates ranging from $110 to $1,100 "well within the range of what is reasonable and appropriate in this market").

"The reasonableness of the number of hours worked requires counsel to not spend excessive time on a case and to not use top legal talent for routine work that associates or paralegals could perform." *In re Processed Egg Prods.*, 2012 WL 5467530, at \*6.  The number of hours worked was reasonable, especially in light of the multiple rounds of discovery and the appeal to the Third Circuit.  *See Cunningham v. Wawa, Inc.*, Civ. No. 18-3355, 2021 WL 1626482, at \*8 (E.D. Pa. Apr. 21, 2021) (finding it reasonable that class counsel expended 2,203.15 hours on a complex litigation).

The lodestar is $1,140,538, which results in a lodestar multiplier of 1.04 ($1,187,995.18 ÷ $1,140,589).  This falls well within the range of lodestar multipliers courts within the Third Circuit have accepted.  *See Prudential*, 148 F.3d at 341 ("Multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied . . . ." (internal citation omitted)); *Barel v. Bank of Am.*, 255 F.R.D. 393, 404 (E.D. Pa. Jan. 16, 2009) (accepting a lodestar multiplier of 1.35).  Thus, the lodestar crosscheck confirms the reasonableness Class Counsel's fee request.

\*         \*         \*

In sum, the requested attorneys' fees are reasonable under both the percentage-of-recovery method and the lodestar crosscheck, and the Court awards Class Counsel $1,187,995.18 in fees.

### B.     Expenses

Class Counsel have also requested reimbursement for $22,004.82 in out-of-pocket litigation expenses.  (Doc. No. 64 at 35.)  "These expenses include filing fees, service of process

fees, expert and professional services fees, deposition expenses, PACER research, travel fees, and administrative expenses such as printing, photocopies, and similar items." (*Id.*) These expenses are well documented and reasonable, and no Class Member objected to the reimbursement, so we will grant Class Counsel's request for reimbursement. *See Cunningham*, 2021 WL 1626482, at *8.

The requested reimbursement does not include the $5,700 Class Counsel paid in JAMS mediation fees. (Doc. No. 64 at 35.) Pursuant to the Settlement Agreement, Travelers has agreed to reimburse Class Counsel for those fees separate and apart from the expenses award. (*Id.*) We find this reasonable.

### C.    *Class Representative Service Awards*

Plaintiffs have also asked the Court to grant both Mr. and Mrs. Stechert a $20,000 service award. (*Id.* at 36.) Service awards are regularly granted to "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation and [ ] reward the public service of contributing to the enforcement of mandatory laws." *Sullivan*, 667 F.3d at 333 n.65.

The proposed service awards are appropriate here. Frustrated with their experience with Travelers,[13] the Stecherts reached out to counsel and have assisted Class Counsel in this litigation for the past six years, including appealing the decision after Judge Joyner granted summary judgment for Defendants. (Doc. No. 64 at 37.) The Stecherts "provided information about themselves, their finances, and their experience in being denied ETE benefits"; "participated in discovery and were deposed"; agreed to the Third Circuit appeal; and attended various court hearings and a settlement conference. (*Id.*) They "actively monitored the

---

[13] The Stecherts report that they had no choice but to purchase a "lemon" to replace their totaled vehicle based on Travelers' premature termination of rental coverage. (Doc. No. 64 at 37.)

litigation, were always available for questions, and participated in the settlement negotiations."

(*Id.*)  Without the Stecherts' involvement, this lawsuit never would have happened, the Class

Members would not have gotten any recovery, and Travelers may not have changed its rental

coverage practices.

Additionally, the service awards are being paid separate and apart from the Class

Distribution and will not reduce the Class Members' recovery.  (*Id.*)  If the service awards were

not granted, or if they were reduced, that money would not be redistributed to the Settlement

Class—it would stay with Travelers.

Finally, other courts within the Third Circuit have approved service awards for similar

amounts and for amounts reflecting a similar percentage of the overall monetary payment to the

class—here, that is 1.1%.  *See Sweda v. Univ. of Pa.*, CIVIL ACTION No. 16-4329, 2021 WL

5907947, at *8 (E.D. Pa. Dec. 14, 2021) (granting service awards of $25,000 each to six named

plaintiffs where, in part because the service awards represented only 1.15% of the total monetary

payment); *Vista Healthplan, Inc. v. Cephalon, Inc.*, CIVIL ACTION No. 2:06-cv-1833, 2020

WL 1922902, at *33 (E.D. Pa. Apr. 21, 2020) (granting $50,000 service awards to each of four

named plaintiffs) (collecting cases).

The Stecherts performed a public service by initiating this action and should be awarded

for their efforts.  Accordingly, the Court grants the request to award Mr. and Mrs. Stechert

$20,000 each.

## IV.    CONCLUSION

For these reasons, the Court approves the Settlement.  The Court also awards $1,210,000

in attorneys' fees and costs to class counsel, and $20,000 each to the Stecherts as a service

award.  An appropriate Order follows.